MARIE N. CARROLL, RESPONDENT, v. MISSOURI POWER AND LIGHT COMPANY, APPELLANT.—96 S. W. (2d) 1074.

Kansas City Court of Appeals.   June 15, 1936.

*Charles M. Bush* and *Cowgill & Popham* for respondent.

*Moore & Moore* and *Irwin & Bushman* for appellant.

SPERRY, C.—Plaintiff, who will be denominated herein as respondent, sued appellant for personal injuries alleged to have been sustained by her while a passenger on appellant's street car, about February 3, 1930. Neither the sufficiency of the petition nor of the evidence, is challenged. Therefore we shall not set out the petition, and shall set out only such evidence as bears upon the points raised herein. From a judgment awarding damages of $5000 to respondent, this appeal is prosecuted.

Respondent was the first witness and testified that on the occasion alleged she was a passenger on appellant's street car and she rang the bell for a stop in the block where she lived. She was standing in the aisle, holding a sack of groceries in her left hand and holding on to the seat grip with the other; that she put her pocketbook under her left arm; that the pocketbook was a large brown one with a metal frame and two buttons that snapped past each other. These buttons were referred to by counsel for both plaintiff and defendant in examining witness as knobs. The pocketbook contained a bunch of keys, comb, pencil, mirror, small coin purse, handkerchief, metal spectacle case and compact. The car stopped abruptly, not in the usual way, and she was thrown forward, her left arm striking the metal fare box with great force. The knobs on the pocketbook caused a bruise about the size of a quarter on her arm and after a few hours she suffered pain in her arm and was sick at her stomach. She had partially lost sensation in her arm, hand and two fingers; her arm had shrunk some and there was atrophy of some muscles. It is not necessary to go into the extent of the injuries because no point is made on that in this case.

Dr. Kuhn testified that he examined her after the injury and told of her trouble with the arm, stating that her trouble was "over the distribution of the musculospiral nerve. On the back of the arm and the radial and median and ulnar nerves." He testified that she, at the time of the trial, hand "changes in sensation in her hand over the branches of the median nerve and over the ulnar and also of the radial nerve." He further described the musculospiral, ulnar and median nerves and how an injury to them by being cut or crushed would manifest itself in certain parts of the arm, fingers and hand,

going into details from which it is inferable that the symptoms of respondent were produced by some blow to the left arm, resulting in injury to said nerves. The following hypothetical question was asked of the witness:

"Q. (By Mr. Bush) Doctor, I want you to assume that on the 3rd day of February, 1930, Marie Carroll was a woman 44 years of age and married; assume that in 1923 she had an operation for toxic goiter and assume that she had a complete recovery therefrom; that in 1926 she had an ovarian operation, at which time her appendix was also removed, a small portion of her uterus, and assume that she had a complete recovery therefrom; that in 1930 she temporarily had pus in one of her kidneys and after the removal of two infected teeth the kidney cleared up so that she was no longer affected in any way thereby; assume that in 1930 she had had her tonsils removed successfully, and assume that in the middle of the year 1933 she had a gall bladder disturbance, caused by gall bladder salts or what is commonly known as gall stones, and went to a hospital for observation and is still inconvenienced to some extent by the condition existing in her gall bladder; assume that prior to February 3rd, 1930, she was in good health, except at the times stated, and able to carry on the usual household duties of a wife as well as perform the usual duties of a stenographer and secretary to one of the Commissioners of the Supreme Court of the State of Missouri, and assume that on or about the 3rd day of February, 1930, she was a passenger for hire upon one of the defendant's street cars, and that upon approaching her destination, at which place she desired to leave said car, she gave the usual and customary signal in the manner provided by defendant for the stopping of said street car, and assuming after giving said signal she arose from her seat and stood in the aisle of said street car, preparatory to alighting therefrom, when the same should come to a stop, and assume as she stood in said aisle of said street car she had with her right hand hold of the handhold provided by defendant and on top and at the corner of the seat, and assume that she held a large pocketbook under her left arm, which pocketbook had a metal frame with two metal knobs on it and articles ordinarily carried by a woman in her pocketbook, and also held a small package of groceries in a sack in her left hand in front of her, and assume that when the street car reached her destination where she desired to alight, said street car came to a stop with a sudden, violent and unusual jerk, causing her to turn the seat over, and break the hold she had with her right hand on said handhold and causing her to be thrown violently forward several feet and against the fare box on said street car, thereby causing her to strike her left arm against the corner of said fare box at a point about midway between the shoulder and the elbow of her left arm, and by the impact causing her body to press against the pocketbook which was held under her left arm; assume

that immediately after the blow to her arm she did not suffer pain, that there was only a blue spot the size of a quarter on her upper arm; assume that during that night her arm became numb as if it were asleep, with slight prickling sensations in the elbow and little and ring fingers of the left hand; assume that during the next day or so there was a pain in the elbow and fingers and thereafter the pain in her left lower arm became more intense; assume that she has gradually lost the use of her left arm and partial paralysis has set in on certain fingers and the thumb of her left hand; assume that the flesh of her left arm and hand became flabby and that there was pain in her upper arm and left shoulder and pain at one time running up into her back, and assume that the use of her left arm and shoulder has become more impaired gradually by degrees from on or about February 3, 1930, down to the present time; that there is a general atrophy of the muscles about the left shoulder, particularly the deltoid muscle; assume that the left arm hangs rather loosely, that the trophy of the deltoid muscle prevents raising the arm to right angles or above the level of the shoulder; assume that there is some wasting or atrophy of the muscles of the left forearm, that there is a marked wasting of the muscles between the thumb and index finger and also some slight wasting of the inner-osseous muscles between the carpal bones of the left hand; assume that there is a complete loss of the use of the ring and little finger of the left hand and that there is some disturbance or sensation over these two fingers; assume that she has an inability normally to extend the wrist on the left forearm and that all movements of the left arm and hand are delayed and made with great difficulty; assume that there are injuries in the upper third of the arm and that there are injuries to the ulnar and median nerves on the inner side thereof, and injuries to the musculospiral nerve on the upper side, resulting in some degree of paralysis both to the movement and of sensation in the distribution of those nerves in the forearm and hand, Doctor, I want you to state, if you can, whether or not in your opinion the condition in which you found her when you made your last examination could have been caused by the force of the impact of her left arm against the fare box as above described.''

Appellant objected to said question in the following terms:

''MR. H. L. MOORE: That is objected to for the reason that it is an improper hypothetical question, an attempt to usurp the functions of the jury; that it is based on facts, some of the facts not in evidence; that it omits other facts that are in evidence that are necessary to form a fair conclusion, and furthermore that the question is purposely complicated with facts that have nothing to do with forming an opinion and that are inserted in the question for the express purpose of usurping the functions of the jury, and making the question cover facts that have nothing to do with the injury.''

And then the following record was made:

"THE COURT: Will you kindly tell me what is left out of the question which does appear in evidence?

"MR. H. L. MOORE: It would take me quite a while to do it, your Honor, but I can pick them out. To start out with, she had a complete recovery from the goiter operation as hypothesized.

. . . . . . .

"MR. H. L. MOORE: The evidence in the case tends to show that she had to take goiter extract for a great length of time up to nearly the time of the trial of this case. That is left out.

. . . . . . .

"MR. H. L. MOORE: My recollection is there was no evidence that after the removal of infected teeth, pus in the kidneys cleared up. It is assumed that she had her tonsils removed, but it is not assumed that she had infected tonsils, which was also true. I can go through the whole thing. Yes, the description, for instance, of the bag that she had under her arm, there are several things about that that were not in evidence, toilet articles that were in it and knobs that were on it, as I recollect, that I don't believe there was any evidence on. There was evidence that it had a metal frame. The fact of how she received the injury, that is included in the question, has nothing to do with the effect of the injury. What I mean is the fact as to whether she was standing in the aisle of the car or whether she paid her fare or whether she was a passenger or anything of that sort has nothing whatever to do with the question.

. . . . . . .

"THE COURT: That is all?

"MR. H. L. MOORE: That is all I think of in this brief time, yes.

"THE COURT: Now, Doctor, would the use of goiter extracts after the operation make any difference in your answer?

"A. Not in the slightest.

"THE COURT: Is it customary to remove tonsils that are not affected?

"A. Only for a fee.

"THE COURT: You may infer that. Why don't you write that in there?

"MR. BUSH: I will. I go on the assumption that they can put in any suggestion. I will put the word 'infected' before 'tonsils'.

"THE COURT: All right. Now the objection is overruled. You may answer it with that amendment."

And the witness answered, "I think it could, yes."

### OPINION.

"When an objection is made to a question propounded to a witness, it should be sufficiently specific to inform the Court and opposing

counsel of the real point in the objection. In this respect there is no difference between an objection made to a hypothetical question and one made to any other question." [O'Neill v. K. C., 178 Mo., l. c. 100; Kinlen v. R. R., 216 Mo., l. c. 173; Edmondson v. Hotel Statler Co., 306 Mo., l. c. 234; Longan v. Weltmer, 180 Mo. 322; Roscoe v. Met. Street Ry., 202 Mo., l. c. 595.]

Measured by the above rule, the following questions were raised:

1. That the question invades the province of the jury. The witness could not properly testify that the conditions found *did* result from being thrown against the fare box, but he could properly say that in his *opinion* they *could* have so resulted. [Holtzen v. Ry. Co., 159 Mo. App. 370; Taylor v. R. R., 185 Mo., l. c. 256; State v. Hyde, 234 Mo. 205.] Here the witness stated, "I think it could have, yes." [Myers v. Mo. Power & Light Co., 66 S. W. (2d) 565; Castanie v. United Rys., 249 Mo. 192.] The question was not bad on this ground.

2. That the question states facts not in evidence: (a) Complete recovery from goiter operation, but it was in evidence that she made an uninterrupted recovery and the witness stated that the fact she took goiter extracts for a time after the operation would not influence his opinion. (b) No evidence that pus in kidneys cleared up after teeth were removed. Respondent testified that her kidney trouble cleared up after removal of infected teeth. Her evidence alone was sufficient upon which to base a hypothetical question on this matter for it *tended* to prove the fact assumed.

3. That the tonsils were infected at the time of the operation but it was not so stated in the question. It is a matter of common knowledge that people do not have tonsils removed unless there is some infection and the doctor so stated in the presence of the jury in answer to the Court's inquiry. Thus the fact of infected tonsils was in the witness' mind when he answered the question, and the jury knew from other evidence in the case that the tonsils were so infected. There is no merit to this contention.

4. Complaint is made that irrelevant facts were stated in the question, not necessary for a medical opinion. Such facts chiefly related to the manner in which injuries were received and were necessary to an understanding of the severity of the blow to the arm. Other facts of this character complained of were not misleading, either to the witness or to the jury. The reason for the rule that all facts, and none other, as are pertinent and have been offered in evidence shall be included in hypothetical questions is that the omission of such a fact, or the inclusion of one not proven, might seriously affect the opinion given by the witness. [Hahn v. Hammerstein, 272 Mo., l. c. 262.] We hold that no misstatement of fact was included or material fact excluded, such as was pointed out to the Court, as would be fatal error; and that if immaterial facts were included they were not prejudicial.

5. Contention is also made that the question assumed the hand bag to contain such articles as women commonly do carry. No objection on this ground was made below. We hear it here for the first time. The objection as made was: "Of the bag she had under her arm, there were several things about that that were *not* in evidence, toilet articles that were in it, knobs that were on it as I recollect, that I don't believe there was any evidence on." The question contained no such statement of contents. It probably would have been better form to have described the contents in detail; but no objection for failure so to do was made. It is now too late. [O'Neill v. K. C., *supra.*] Furthermore the articles contained in the pocketbook were described in detail by respondent in answer to cross-examination of counsel for appellant so that no one could have been misled. If he wanted the articles named in the question he should have so stated when the court asked him to state the facts that were left out of the question and cannot on appeal assign a different objection from that made below. [Edmondson v. Hotel Statler Co., *supra.*]

6. Lastly, the question is criticised because it is assumed therein that the pocketbook was equipped with knobs. Counsel for appellant, on cross-examination, referred to the so-called buttons as knobs. Since appellant assumed same to be knobs, we can see no objection to such an assumption in a hypothetical question.

It is noted that it is being urged in *this* Court that the question permits and calls for an opinion based upon an opinion. Whether this be correct under the authority of Cardinale v. Kemp, 309 Mo., l. c. 275; McAnany v. Henrici, 238 Mo., l. c. 111, and many other cases, is not material to a determination here. A question calling for inference on inference, or opinion on opinion, is no more permissible than is one basing a presumption upon another presumption. But this objection was not raised below when this witness was asked the question and hence, under the rule announced in Bragg v. Met. Street Ry. Co., 192 Mo., l. c. 342: "That a general objection, in a case where the evidence is competent for any purpose, may not be laid in the record below (to use a homely simile) as an egg to hatch later in the Appellate Court, absent precise and definite objections. . . ." Not having called this point to the attention of the trial court, it is now too late to urge it here. [O'Neill v. K. C., *supra*; Longan v. Weltmer, *supra*; and other cases, *supra.*]

But respondent propounded this identical question to another witness, Dr. Neal. At this time appellant objected for the same reasons as stated in prior objection, which reasons have already been ruled on herein; and for the further specific reason that there was included an assumption of injury to the ulnar, median and musculospiral nerves with no evidence to support such an assumption, and that the question called for an opinion based upon another opinion, or an inference on an inference. Neither of said additional specifications

were included in the objection made when the question was asked of Dr. Kuhn, who had already testified in answer to the same question. We think it was not error to ask a second medical witness the identical hypothetical question previously asked the first witness, unless proper objection were made when the first witness was asked the same question. One will not be heard to complain of the admission of evidence over his objection when evidence of a like tenor has previously been admitted without objection. [Laughlin v. Railway Co., 275 Mo. 459; Keyes v. C. B. & Q. R. R. Co., 326 Mo. 236; Bennette v. Hader, 87 S. W. (2d) 413.] Since the evidence was already in without proper objection and this was merely cumulative, it was not reversible error. [4 C. J. 977-978.]

The reason for the above rule is that it is impossible to determine if the jury was influenced to the verdict because of the evidence adduced without objection, or because of that adduced over proper objection. Sometimes it has been held that a large number of witnesses testifying over objection properly made, after one witness had been permitted to so testify without proper objection, will be error. But such is not the case here where one witness only so testified before and one after, both being medical witnesses and testifying on hypothetical questions.

Furthermore, when objection was made, the Court, in the presence of the jury and the witness, ordered: "Where you assume there was injury to the ulnar nerve, strike that out, or any other nerve for that matter."

But we place the decision on the grounds that the same questions had been asked a previous witness to which no valid objection was made, nor any objection whatever upon the grounds now urged, and the previous witness was permitted to answer. This was a waiver of their right to object to the evidence of this witness. An objection, too general in its nature to inform the trial court of the real reason for objection, is the same as no objection. Since this ground was not specified in the objection first made, it is the same as if no objection were made at all, so far as the grounds here urged are concerned. [Berry v. Adams, 71 S. W. (2d), l. c. 134.]

Other criticisms of the question are urged here but we have considered all that were properly raised below and the others mentioned in brief of appellant were not called to attention of the trial court. [Kinlen v. Railroad, supra.]

Criticism is made of the admission of evidence that respondent supported her sister and four children out of her salary. The objection offered to this evidence at the time was that "it is immaterial." Such an objection is too general to advise the trial court of the real reason for objection. [Morton v. Tel. Co., 280 Mo. 360; Berry v. Adams, 71 S. W. (2d) 126; Threadgill v. United Rys. Co., 214 S. W. 161.]

It is ordinarily true that if the evidence was not competent for

any purpose, a general objection was good. [Bailey v. Kansas City, 189 Mo., l. c. 512.] But here the evidence adduced was provoked by appellant who, on cross-examination of respondent's husband to the effect that, although he made $4700 per year, yet he consented to his wife's working. Having provoked and invited the evidence, appellant cannot now complain. [Marlow v. Nafziger Bakery Co., 63 S. W. (2d) 115; Lewis v. St. Louis Independent Packing Co., 3 S. W. (2d) 244, l. c. 250.] Furthermore, this point was not mentioned in the motion for new trial except under the general claim of "irrelevant, incompetent, improper and prejudicial" evidence, and no point on it was presented in the original brief herein. After the original opinion was handed down and motion for rehearing was granted, appellant presents this, in a supplemental brief, for the first time in this Court. The point evidently was not at first seriously considered by appellant. It was not objected to in trial court because it was "prejudicial" in any way, but because it was "immaterial." No mention was made in motion for new trial of "immaterial" evidence, but only of "irrelevant, incompetent, improper and prejudicial" evidence.

Appellant complains of instruction Number 1, given for the respondent, that it was a roving commission to the jury to find any and all character of injuries sustained, regardless of whether within the scope of the pleadings with reference to the parts of her body injured, and that it was broader than the pleadings. It will be noticed, however, that such instruction dealt with the question of negligence and not with the measure of damages. The matter of damages and the measure thereof were dealt with by instruction Number 5 for respondent, which instruction stands without criticism from appellant on this appeal.

Instruction Number 1 must be read in connection with instruction Number 5; and, when so read, the proper measure of damages appears to have been submitted to the jury. It follows that the complaint is not well made.

Appellant complains of respondent's instruction Number 2, that it is unnecessarily long, prolix, confusing, and misleading and that the second paragraph thereof amounted to a comment upon the evidence, and that the entire instruction unnecessarily and prejudicially refers to appellant's burden of proof upon its affirmative defense of contributory negligence.

In Mitchell v. Dwyer (Mo.), 57 S. W. (2d) 1082, the Supreme Court, while not holding the giving of it to be reversibly erroneous, nevertheless severely criticises an instruction for the defendant under review upon appeal therein, which, after advising the jury of the burden of proof upon the plaintiff to prove the negligence alleged in the petition upon which his case was based, elaborated further upon such question at length. The court stated therein that a short simple instruction, advising the jury that the burden is on plaintiff

to prove his case by a preponderance of and by the greater weight of the credible evidence and, unless he had done so, the jury must find for the defendant, should be sufficient to inform the jury what plaintiff should be required to do; that the more such an instruction is elaborated upon, the more complex it becomes and the more likely to be misunderstood.

Measured by the rule thus announced in the Mitchell case, instruction Number 2 in this case is objectionable. However, in that case, the giving of the instruction alone was not treated as reversible error; and the one here will not be so treated.

Respondent's instruction Number 4, as modified and given by the court, in defining the duty of appellant in bringing its car to a stop as requiring the "highest degree of care" and in defining the term "highest degree of care" as meaning the "highest practical degree of care of a very prudent person engaged in like business" in view of all of the facts and circumstances in evidence and in defining the terms "negligently" and "negligence" and "contributory negligence," is in harmony with the law as it has several times been declared by the Supreme and Appellate Courts of this State; and such instruction is not open to the criticism made thereof by appellant in so defining such duty and in so defining such terms. [Hults v. Miller (Mo. App.), 299 S. W. 85; Perkins v. Kansas City Southern R. Co. (Mo.), 49 S. W. (2d) 103; Bischoff v. People's Ry. Co., 121 Mo. 216, 25 S. W. 908; Walker v. Quincy, O. & K. C. R. Co. (Mo.), 178 S. W. 108; Kirkpatrick v. Metropolitan St. Ry. Co., 211 Mo. 68, 109 S. W. 682; May v. Chicago, B. & Q. R. Co., 284 Mo. 508, 225 S. W. 660; Benjamin v. Metropolitan St. Ry. Co., 245 Mo. 598, 151 S. W. 91; Link v. Atlantic Coast Line R. Co. (Mo. App.), 233 S. W. 834.]

Appellant makes various complaints of the argument of respondent's attorney to the jury, the first of which relates to the remarks of such attorney directed to various alleged inconsistencies of respondent's attorney when he said, "First, they say she (referring to respondent) wasn't hurt, and then they say she is guilty of contributory negligence in arising from the aisle and standing there preparatory to alighting. Now, how can she be guilty of contributory negligence when she is preparing to alight if she was not in the car? I will ask the jury that." Upon objection thereto at the time by appellant's counsel that it was a misstatement of the law, the court directed respondent's counsel, "Proceed." Upon the further objection by appellant's counsel that both of them were consistent, the court remarked, "The jury will follow the instructions of the Court." This appears to have been the entire record made upon such objection. The record presents nothing for review by us. [Torreyson v. United Rys. Co. of St. Louis, 246 Mo. 696, 152 S. W. 32; Young v. St. Joseph

(Mo. App.), 4 S. W. (2d) 1104; Milliken v. Larrabee (Mo. App.), 192 S. W. 103.]

It is well-settled law in this State that, whenever the remarks of counsel during the progress of a trial are considered by the opposing counsel as erroneous or prejudicial, it is necessary that an objection be noted to the party's remarks alleged to be objectionable to call the attention of the trial court to the specific ground on which the objection is based and that the court be requested to rebuke counsel therefor; and, should the court not administer the proper rebuke, objecting counsel should thereupon except to the court's failure to rebuke; and, unless the record shows this to have been done our courts, except in extreme cases, will not grant a new trial on this ground. [Authorities last above cited.]

It is unnecessary to set out the other parts of such argument to which objection is made or the particulars thereof, for the reason that, upon an examination of the record, it fails to show in any instance where objection is made that any proper foundation was laid upon the trial by objection and exception, as above indicated to be necessary, to preserve any question of error in the argument complained of for review upon this appeal.

It follows that there is nothing in the record from which the court may be said to have committed error in refusing appellant's motion to discharge the jury by reason of the argument complained of. There is nothing in the record that would justify a departure in this case from the rule above noted. It does not appear that the case was a close one upon the facts; that the jury was unduly influenced or misled by the argument complained of in any manner; or that the trial court abused its discretion in refusing new trial on this ground. Judgment affirmed. *Campbell, C.,* concurs.

PER CURIAM:—The foregoing opinion of SPERRY, C., is adopted as the opinion of the court. The judgment is affirmed. All concur.