[Civ. No. 14318. First Dist., Div. One. Sept. 19, 1950.]

P. T. WETMORE et al., Respondents, v. BRIG LUMBER MILLS COMPANY (a Copartnership) et al., Appellants.

Henry F. Wrigley and James A. Himmel for Appellants.

Wallace S. Meyers for Respondents.

BRAY, J.—The issues on this appeal by defendants from a judgment for $3,250 in favor of plaintiffs in an action for breach of a contract to cut timber have by express concession of counsel for defendants been narrowed to the one question: Is there sufficient evidence to support the court's finding that at the time of the breach of the contract there was 1,500,000 feet of commercially marketable timber?

## FACTS

On May 2, 1946, the parties entered into a written agreement whereby plaintiffs sold and defendants bought all the timber located on described land in Trinity County at the price of $2.00 per 1,000 feet board measure of manufactured salable lumber. Defendants agreed to remove all lumber, tree tops and trimmings so that the "property shall be clean and free from Second Party's lumbering operation debris . . ." After removing approximately 213,000 feet of timber, for which they paid plaintiffs the agreed price, defendants abandoned the contract, and refused to cut any more timber or to clean up the debris. The court found the foregoing facts and gave judgment for plaintiffs in the sum of $250 damages for defendants' failure to remove the tree tops, trimmings, etc., and in the sum of $3,000 damages for the breach of contract. This sum was based upon its finding that there was left 1,500,000 feet of commercially marketable

timber, upon which the court allowed the contract price of $2.00 per 1,000 feet.

## SUFFICIENCY OF EVIDENCE

While other questions are discussed in defendants' briefs, their closing brief stated (p. 11): "If the respondents by a preponderance of the evidence at the time of the trial had proved that there was 1,500,000 feet of merchantable marketable lumber on the respondents' land, appellant would be liable for the damages of $2.00 per thousand feet. But such is not the evidence in the instant case." On page 7 substantially the same concession is made. At oral argument, defendants' counsel, in response to a direct question by the court, conceded that the sole question before the court was the sufficiency of the evidence to support the court's finding as to the *amount* of marketable timber left. Therefore, we are confining our opinion to that single question. Plaintiff P. T. Wetmore testified that prior to the signing of the agreement, defendant Fisher and he went to the premises with a Mr. Moore who was employed by defendants as "their woodsman" and that after going over the property he stated to defendant Fisher that there were eight to twelve million feet of timber. This conversation was not denied. Plaintiff P. T. Wetmore also testified, without objection, that Jack Woods who "was in charge of the lumbering operations for the defendants" stated that he was willing to bet a $100 "they would get 4 million feet out of there." This statement was not denied. Witness Hardin testified, without objection, that for 10 years he had been engaged in the timber business, felling timber, trucking and sawing logs, and that there were between two and three million feet of marketable timber there. On cross-examination he testified that he had had no experience in cruising timber to find the quantity in a given area, and had not cruised the timber on the Wetmore property to find the exact amount thereon. When asked if he knew how much timber there was on the property he stated, "Well, no, not exactly." He had previously testified that he had gone on the property many times and observed the timber that was there. A lumberman who has spent 10 years in felling timber is entitled to give his opinion as to the quantity of timber on land with which he is familiar. His failure to cruise the timber went to the weight of his testimony only.

Witness Stevens, who formerly lived on the property and had worked in the timber there, testified, without objection,

that he estimated that there were two million feet. On cross-examination he testified that he did not know how much lumber was made out of the logs actually hauled from the property. Defendant Kalajian testified that in January or February, 1947, he sent two timber contractors, experienced cruisers, to look at the property, and they told him there were about two million feet—"One of them said there wasn't 2 million feet, but it was all good; the other said there was 2 million feet." Later he testified: "I know from what different men came down and told me. Three of them came down and told me there was around 2 million feet, so I assumed it is 2 million feet." Again he testified: "I found out we had at that time spent about $48,000 there and only had two million feet of timber . . ." Defendants offered no evidence as to the amount of timber remaining. ■ Deducting from the two million feet (which was the lowest estimate given of the amount of merchantable timber on the property at the time of the contract) the amount of timber which defendants removed before abandonment, and the difference in footage between standing timber and manufactured lumber, left approximately 1,587,000 feet. Apparently the court in this manner arrived at its finding of 1,500,000 feet. It is obvious from the foregoing recital of the evidence that there was sufficient to justify the court's finding.

The judgment is affirmed.

Peters, P. J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied October 19, 1950, and appellants' petition for a hearing by the Supreme Court was denied November 16, 1950.