STATE of Missouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Relator-Appellant,

v.

Gerald WARNER and Lorene Warner,
Defendants-Respondents.

No. 8062.

Springfield Court of Appeals.
Missouri.
Oct. 10, 1962.

Robert L. Hyder, Melvin Englehart, Jefferson City, for relator-appellant.

Almon H. Maus, Monett, for defendants-respondents.

STONE, Judge.

In this proceeding by the Missouri State Highway Commission (hereinafter referred to as the Commission) to condemn additional right of way for Route HH in Barry County, the commissioners awarded no damages to defendants, Gerald Warner and Lorene Warner, for appropriation of the right of way through their 160-acre farm; but, upon trial of their exceptions in circuit court, defendants obtained a jury verdict for $2,500. From the judgment entered thereon, the Commission has perfected this appeal.

Route HH follows the course of a previously-existing "state-maintained" road and runs in a general easterly-and-westerly direction from Highway 37 for a distance of 5.389 miles to the west. Defendants' farm, on which they have resided since 1940, is comprised of two rectangular 80-acre tracts, one of which lies lengthwise east-and-west on the south side of Route HH with a frontage of one-half mile on that road, and the other of which lies north-and-south on the north side of Route HH with a frontage of one-quarter mile on that road. Defendants' five-room, modern flagstone home with two enclosed porches, their 40' x 58' barn, and all of their outbuildings (including a two-car garage, elevated milking parlor, chicken house, well house and machine shed) are on the south side of the road. In this proceeding, the right of way of Route HH was widened from 30 feet to a minimum of 70 feet and a maximum of 90 feet. On the north side of the old right of way, a strip only 10 feet in width was taken; but, on the south side, the appropriated strip (hereinafter referred to as the south strip) was 30 feet in width for three-eighths mile and 40 feet in width for one-eighth mile in front of the east end of defendants' 80-acre tract on that side of the road. The total area taken from defendants was computed at 2.052 acres. The segment of road designated as Route HH, which has been widened and improved as a result of this proceeding, terminates at the west line of defendants' farm.

Defendants' primary use of their land is as a dairy farm, although they also "feed out" about 200 hogs each year. With the exception of 6 acres in timber (of which 4 acres are just west of the house and 2 acres are "back on the other end"), their farm is in permanent pasture. They usually raise all of the hay needed for their herd of about 48 cows and heifers and also have some hay for sale. The soil is described as loam, and the contour of the land is said to be "slightly rolling." The field east of defendants' home and on the south side of Route HH gently slopes and drains from the east and west sides of the field into a north-and-south depression or draw near the center of the field which, in turn, drains to the north and thus toward Route HH. Prior to the appropriation, defendants had constructed an east-and-west "rock dam" or "fill" across this draw just south of the south right-of-way line of Route HH. Witnesses estimated its height in the bottom of the draw at 3 to 4 feet and its length, east and west, at "over 100 feet" or "175 or possibly 200 feet." Whatever its dimensions may have been, "it took approximately 100 loads of rock." The purpose of the rock fill was to slow down and back up the water draining into and running north in the draw, so that the soil would not wash and erode. Defendants' evidence was to the effect that they "had to have it (the rock fill) there" and that it had served its intended purpose well. This rock fill was on

the south strip and was removed when Route HH was widened and improved. Of the consequences of such removal, more anon.

Another item of alleged damage was the loss of a portion of the timbered tract west of defendants' home. By amendment of the petition, shade trees in the south strip in front of the home were "reserved to the defendants and will be left in place," but there was no such reservation with respect to trees in the south strip west of the house. The *Commission's* evidence was to the effect that the appropriated trees in the south strip were few in number ("18 or 20 at the most"), that they "looked * * * more like brush or bushes than trees" and were relatively small in size ("maybe 2 inches" but certainly not "as large as 3 inches in diameter"), and that they had no value as "merchantable timber." In sharp contrast, *defendants'* evidence was to the effect that the appropriated trees in the south strip were 117 in number, that they were not "scrub oak" but were big oak trees "from 12 to 16 inches in diameter," and that they were valuable not only for their potential worth as "merchantable timber" but also as "a good windbreak" for defendants' home and their cattle.

Defendants' land was fenced on both sides of Route HH prior to the appropriation, so widening of the road required the removal and relocation of one-half mile of fence on the south side and one-quarter mile on the north side and resulted in expenses (itemized by defendants) in the aggregate sum of $397.03. Also, the south line of the south strip "went right through the middle" of "a good pond" in the timbered area west of defendants' home, and the road improvement project drained the pond and destroyed its utility. That, by reason of appropriation of the south strip, the distance from the front of defendants' home to the south right-of-way line of Route HH had been reduced from 60 feet to 30 feet was another factor which, so defendants' witnesses said, adversely affected the market value of defendants' farm.

■ Although counsel examined and cross-examined concerning the practical importance and the monetary impact of the foregoing factors, each witness (qualified in this testimonial area) properly was interrogated as to his opinion of the reasonable market value of defendants' farm, considered as a whole, immediately before and immediately after the condemnation, and the jury properly was instructed that the measure of defendants' damages was the difference in such reasonable market value. State ex rel. State Highway Com'n. v. Leftwich, Mo.App., 263 S.W.2d 742, 747(7); State ex rel. State Highway Com'n. v. Huddleston, Mo.App., 52 S.W.2d 33, 35(6). As is usually the case, the triers of the facts were offered a motley, incongruous assortment of views and values. Three witnesses for the *Commission* thought that the reasonable market value of defendants' farm was *higher* (by $3,500, $2,000 and $2,000, respectively) after the condemnation and thus that defendants had been benefited, rathei than damaged, by the road improvement project. On the other hand, *defendants'* witnesses testified that the market value of the farm was *lower* after the condemnation, the resulting *decrease* in valuation being fixed at $3,000 by defendant Gerald Warner, at $2,850 and $2,700, respectively, by two licensed real estate salesmen, and at $2,460 and $2,200, respectively, by two farmer-stockmen. So, the verdict was within the range of the opinion testimony and found adequate support in the evidence. Cf. Empire Dist. Elec. Co. v. Johnston, 241 Mo. App. 759, 268 S.W.2d 78, 83–84.

■ The primary point in the Commission's brief is that "the court erred in the admission of evidence of damages arising from erosion and loss of timber," under which it is said in subpoint A that "evidence of erosion to the land of the defendants that would result in the future was not based on facts and was mere guess and conjecture" and in subpoint B that "all of the testimony relating to the damages resulting from the loss of timber * * * was conjectural and guesswork and not based on

the best evidence ascertainable." Many years ago our Supreme Court, in the oft-cited case of School Dist. of Kansas City v. Phoenix Land & Improvement Co., 297 Mo. 332, 344, 249 S.W. 51, 54(7), admonished the appellant in a condemnation proceeding that, if "it desired to have the ruling of the (trial) court in regard to the admission or rejection of (evidence) reviewed here, it should have set out the names of the witnesses, and at least the substance of the testimony improperly admitted, of which complaint is made, and giving the page of the record where found." Certainly, V.A. M.R. Rule 83.05, subd. (a)(3), which plainly provides that "(t)he points relied on * * * shall show what actions or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous," contemplates particularization in "points relied on" [Guidicy v. Guidicy, 361 Mo. 1127, 238 S.W.2d 380, 383(1); State at inf. of Dalton ex rel. Erwin v. Taylor, Mo.App., 293 S.W.2d 12, 19(5); Oertel v. John D. Streett & Co., Mo.App., 285 S.W. 2d 87, 98(8)], and the requirements of the rule are not satisfied by discussion and references in the "argument" [Nibler v. Coltrane, Mo., 275 S.W.2d 270, 274(5); State ex rel. State Highway Com'n. v. Harrison, Mo.App., 311 S.W.2d 104, 108(4)], for an appellate court has no duty to seine through the entire brief in an effort to ascertain the points on which an appellant depends. Sides v. Contemporary Homes, Mo.App., 311 S.W. 2d 117, 122; Beeler v. Board of Adjustment of City of Joplin, Mo.App., 298 S.W.2d 481, 483(2).

The salutary purpose of, and the urgent need for, substantial compliance with the requirements of the rule are nowhere better illustrated than in the case at hand, where six witnesses testified concerning "damages arising from erosion" (i. e., concerning the effect of appropriation and removal of the rock fill) and five witnesses testified concerning "damages arising from loss of timber," and where most of the testimony on those subjects was received either without any objection or over purported objections so general and so untimely as to be utterly ineffectual and meaningless. Proceeding to illustrative detail, we find that the *first* evidence as to the effect of removal of the rock fill was received, *without objection or motion to strike,* when the first witness, defendant Gerald Warner, testified that removal of the rock fill had affected defendants' farm in that "it's started to wash and I won't be able to farm it," referring to the field east of the house and south of Route HH.

■■ Inquiry was made of the next witness, one Gibbons, as to whether defendants' farm had been affected by removal of the rock fill and, *without objection or motion to strike,* he answered that there had been "a bad effect; it has started eroding." Then Gibbons, a resident of Barry County for 35 years, formerly a farmer and at the time of trial a licensed real estate salesman, was asked, "from your experience in such matters, could you say whether or not that condition will continue in the future," and the witness answered fully, "yes, sir, it will (continue) to wash and wash clear back up in the field," before counsel for the Commission said "I object to the question and answer, because—" and the court responded, "overruled." Thus, this portion of the record comes to us on a naked general objection which, even if it had been timely, would have preserved nothing for appellate review [State ex rel. State Highway Com'n. v. Cone, Mo., 338 S.W.2d 22, 26(6); Stutte v. Brodrick, Mo., 259 S.W.2d 820, 824(3); Hoffman v. St. Louis Public Service Co., Mo., 255 S.W.2d 736, 742(7) ], since it has long been settled that "(a) general objection, in a case where the evidence is competent for any purpose, may not be laid in the record below (to use a homely simile) as an egg to hatch later in the appellate court into precise and definite objections." Bragg v. Metropolitan St. Ry. Co., 192 Mo. 331, 342, 91 S.W. 527, 530. We have noted the Commission's complaint, voiced for the first time in its reply brief, that the foregoing objection "was overruled by the

court without permitting counsel . * * * to state the reason for his objection." But nothing indicates that counsel in any wise then pursued his objection; and, even though the court's ruling interrupted counsel, the fact remains that, with no suggestion that counsel did not have an opportunity to object before the answer was given, the tardy objection "to the question and answer" was untimely and (with or without a specification of reason therefor) would have been within the general rule that an objection after answer comes too late and preserves nothing for review.[1]

■ Furthermore, additional testimony of the same character shortly came into the record, *without objection or motion to strike*, when the next witness, one Howerton, agreed on cross-examination that defendants' permanent pasture had not been damaged "except the dam has been taken out and it will cause washing in his field" and, in conceding that there had been no "washing" in the field to the time of trial, thus qualified his response, "I would say there wasn't at this time, but it will—." The Commission's counsel also asked witness Howerton "how much damage did you allow for the rock fill" and elicited the answer "I allowed $500 on that." In the argument section of its brief, the Commission now complains that witness Howerton "was permitted by the court" so to testify; but, with this testimony developed on cross-examination and received without objection or motion to strike, it obviously presents nothing for appellate review. Sandler v. Schmidt, Mo., 263 S.W.2d 35, 40(9); Le-Grand v. U-Drive-It Co., Mo., 247 S.W.2d

706, 714(13); Reger v. Nowotny, Mo., 226 S.W.2d 596, 598(8).

This brings us to the testimony of defendants' witness Ellis, a licensed real estate broker, concerning "damages arising from erosion," that being the only other evidence on this subject mentioned in the argument section of the Commission's original brief. After witness Ellis had, *without objection or motion to strike*, testified on direct examination that removal of the rock fill had a "bad" effect on the market value of the farm, defendants' counsel put the question, "now that the fill * * * has been removed, what can be expected to happen there," the Commission's counsel interposed the prompt and timely, but gaunt and meaningless,[2] objection "I object to the question," and (with that overruled) Ellis stated "the water comes down and starts cutting a channel, and the first thing you know you have a big ditch." His attention subsequently having been directed to a photographic exhibit reflecting erosion on the south side of Route HH which, although within the highway right of way, was (so defendants' evidence ran) within two feet of the east-and-west fence along the north line of defendants' field, Ellis was asked "can you say whether or not that can reasonably be expected to wash on back into the field there" and answered "yes, sir," before counsel started an objection, "I object—," which the court interrupted with "overruled." Thereafter practically the same question, answer, interrupted objection and ruling were repeated, as if the needle were stuck in the same groove on a broken record, before the witness added "yes, it will be expected to wash back down

1. Teters v. Kansas City Public Service Co., Mo., 300 S.W.2d 511, 515(3); Kleinschmidt v. Johnson, Mo., 183 S.W.2d 82, 85(7); Devine v. Kroger Grocery & Baking Co., 349 Mo. 621, 162 S.W.2d 813, 819–820(16); Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S.W.2d 742, 747(8, 9); Durbin v. Cassalo, Mo.App., 321 S.W.2d 23, 26(4, 5); Borgman v. Boten, Mo.App., 225 S.W.2d 360, 362(3); State ex rel. State Highway Com'n. v. Bengal, Mo.App., 124 S.W.2d 687, 689(7).

2. Faught v. Washam, Mo., 329 S.W.2d 588, 599(16); Hoffman v. St. Louis Public Service Co., Mo., 255 S.W.2d 736, 742 (7–9); Gaty v. United Rys. Co., Mo. (banc), 251 S.W. 61, 64(1); Anderson v. Welty, Mo.App., 334 S.W.2d 132, 138 (11); Taylor v. Kelder, 229 Mo.App. 1117, 1131, 88 S.W.2d 436, 444(9); Fox v. Connecticut Fire Ins. Co. of Hartford, Mo.App., 268 S.W. 393, 395(6).

there, at least when it rains," and the Commission's counsel finally expanded his objection, "I object, your honor, because there is no evidence that he knows the nature of the soil—," and again was interrupted with "the objection will be overruled."

■■ The interruption of counsel while stating the grounds for an objection is not approved. But, sympathetically as our ear may be attuned to the complaint of the Commission's counsel concerning such interruption (although that complaint is as tardy as were most of his objections), we still could not find reversible error in the overruling of the interrupted objections to the testimony of witness Ellis, even if we were to treat them as embodying the grounds now argued on appeal. In the first place, each of the interrupted objections, having been interposed after the answer had been completed, came too late and preserved nothing for review. See again the cases cited marginally in note 1. Furthermore, as defendants here insist, the Commission should not be heard to complain of the admission of the above-quoted testimony of witness Ellis where (as we have pointed out) testimony of the same tenor theretofore had been received without objection.[3] Finally, with the rock fill having been dragged through the evidence repeatedly, with photographic exhibits of defendants' field, the draw, and the erosion just north of the field already before the jury without objection, and with no point on appeal that the verdict was excessive, we are not persuaded that the evidence, of which the Commission here complains, materially affected the merits of the

action, and thus reversal of the judgment would not be justified for error (if any) in admission of this evidence. V.A.M.R. Rule 83.13(b); V.A.M.S. § 512.160(2); Beetschen v. Shell Pipe Line Corp., Mo.App., 248 S.W.2d 66, 72(8), affirmed 363 Mo. 751, 253 S.W.2d 785. Although not undertaking a discussion of this subpoint on its merits, we note that, in Walker v. Davis, 83 Mo. App. 374, 378(3), it was said that the trial court properly had admitted in evidence the opinion testimony of farmer witnesses as to the probable effect of overflow water on land.

■ The Commission is in no better position with respect to subpoint B directed to "all of the testimony relating to the damages resulting from the loss of timber." Without descending into interminable detail, we observe that the first evidence as to the monetary damage resulting from the appropriation of timber in the south strip west of defendants' home came into the case during cross-examination of defendants' witness Gibbons when he said, "I went out and looked at it (the timber) and that figured $500"; that the next evidence on this subject was developed in cross-examination of defendants' witness Howerton who stated that "I allowed $300 for the timber" and, upon inquiry by the Commission's counsel as to how he had arrived at that figure, explained that "I just drove along and seen how many (trees) there was there, and figured out how much they was worth * * * on the value of lumber and wood and posts for sale"; and that no objection or motion to strike was interposed to any of this testimony. Certainly, the Commis-

---

3. Hanson v. Tucker, Mo., 303 S.W.2d 126, 129; Devine v. Kroger Grocery & Baking Co., supra, 162 S.W.2d loc. cit. 819–820(17); Bennette v. Hader, 337 Mo. 977, 87 S.W.2d 413, 416(7), 101 A.L.R. 1190; Sullivan v. Union Elec. Light & Power Co., 331 Mo. 1065, 56 S.W.2d 97, 104(17); Keyes v. Chicago, B. & Q. R. Co., 326 Mo. 236, 31 S.W.2d 50, 62(9); Gaty v. United Rys. Co., supra, 251 S.W. loc. cit. 64(2); Laughlin v. Kansas City Southern Ry. Co., 275 Mo. 459, 205 S.W.

3, 8(13); Wilson v. Murch, Mo.App., 354 S.W.2d 332, 340–341(20); Anderson v. Welty, supra, 334 S.W.2d loc. cit. 139 (12); Kelly v. Rieth, Mo.App., 168 S.W. 2d 115, 118(1); State ex rel. State Highway Com'n. v. Cook, Mo.App., 161 S.W.2d 691, 693–694(4); Carroll v. Missouri Power & Light Co., 231 Mo.App. 265, 273, 96 S.W.2d 1074, 1079(12, 13); Rose v. National Lead Co., Mo.App., 94 S.W.2d 1047, 1050(4); DeMoss v. Baudo, Mo.App., 79 S.W.2d 766, 771(6).

sion may not have appellate review of this evidence. Faught v. Washam, Mo., 329 S.W.2d 588, 599(17).

██ With the above-quoted testimony in the record without objection or motion to strike, the Commission has no standing to complain (as it does in the argument section of its brief) about the evidence of defendants' rebuttal witness Coffey to the effect that, in the appropriated trees, there were "at least 15,000" board feet of lumber worth $15 per thousand and that, after the saw timber was taken out, "most any tree top would make a half a rick of (fire) wood" worth $3.50 per rick on the ground or $4 per rick stacked. See again the cases cited marginally in note 3. Furthermore, witness Coffey had bought standing timber and had operated a sawmill for more than 20 years —"all of my life"—and, even though he did not "mess with" the fire wood, in his words "I've cut enough (timber) that I can tell about how much is in a tree top." He had driven along the road and had looked closely at the appropriated trees with a view to buying the timber himself. We have no doubt as to the admissibility of his opinion testimony.[4] That (as the Commission here emphasizes) he did not make an exact count of the trees and precise measurements of each of them did not render his testimony incompetent but only went to its weight. Wetmore v. Brig Lumber Mills Co., 99 Cal. App.2d 492, 221 P.2d 963, 964(1); Hunt v. Stimson, 6 Cir., 23 F.2d 447, 452(12). See

Cash v. Wysocki, Mo.App., 229 S.W. 428, 430(6).

██ The only other point in the Commission's brief is that "the court erred in refusing instruction B submitted by the plaintiff." With this instruction not set forth in the brief as is required by V.A. M.R. Rule 83.05(a), the point is not preserved and presented properly and, for this reason alone, might be disregarded. Brown v. Thomas, Mo.App., 316 S.W.2d 234, 237 (9); Bartlett v. Hume-Sinclair Coal Mining Co., Mo.App., 351 S.W.2d 214, 217(5); Smith v. Aldridge, Mo.App., 356 S.W.2d 532, 539. More importantly, the stated point does not reflect even colorable compliance with the unequivocal requirement of V.A. M.R. Rule 83.05(a) (3) that "(t)he points relied on * * * shall show what actions or rulings of the Court are sought to be reviewed and wherein and why they are claimed to be erroneous." See also Rule 83.05 (e). Our courts repeatedly have refused to review generalized complaints of this character about instructions.[5] But from the transcript and the argument section of the brief we learn that instruction B is (as the Commission's counsel frankly state) clearly within the category denominated as "cautionary." As counsel also recognize, it is a long-established and frequently-invoked principle that the giving or the refusal of cautionary instructions rests *largely* in the discretion of the trial judge. See cases collected in 27 West's Missouri Digest,

---

4. Wetmore v. Brig Lumber Mills Co., 99 Cal.App.2d 492, 221 P.2d 963; J. H. Leavenworth & Son v. Hunter, 150 Miss. 245, 116 So. 593, 595(2); Bassett v. Stringer, 216 Miss. 766, 63 So.2d 234, 236(2); Hunt v. Stimson, 6 Cir., 23 F. 2d 447, 452(12, 13); Isaac v. McLean, 106 Mich. 79, 64 N.W. 2. See also Wilson v. Buchanan County, 318 Mo. 64, 298 S.W. 842; Denney v. Spot Martin, Inc., Mo.App., 328 S.W.2d 399, 403–405 (4, 5); Miller v. Great American Ins. Co., Mo.App., 61 S.W.2d 205, 206(1); Gray v. Cooper, 217 Mo.App. 592, 274 S.W. 941, 945(11); Carpenter v. Hines, Mo.App., 239 S.W. 593, 595(6); Smith v. Sickinger, Mo.App., 221 S.W. 779, 780

(6); Bennett v. Chicago, R. I. & P. Ry. Co., 151 Mo.App. 293, 131 S.W. 770, 771(2); Pope v. Ramsey & Ramsey, 78 Mo.App. 157, 161–162(1); Rothwell v. Dean, 60 Mo.App. 428, 433–434.

5. Daugherty v. Maddox, 364 Mo. 240, 260 S.W.2d 732, 734(3); State ex rel. State Highway Com'n. v. Schade, Mo.App., 271 S.W.2d 196, 198(7); Palmer v. Security Ins. Co. of New Haven, Conn., Mo.App., 263 S.W.2d 210, 217(8); Biggs v. Crosswhite, 240 Mo.App. 1171, 225 S.W.2d 514, 521(7); Norman v. Jefferson City Coca-Cola Bottling Co., Mo.App., 211 S.W.2d 552, 557–558(4).

Trial; ▮▮▮▮ We emphasize *"largely"* because there are many situations in which the giving of proper cautionary instructions is justified (as the court observed with respect to the record presented in Mendenhall v. Neyer, 347 Mo. 881, 887, 149 S.W.2d 366, 370), and the stated principle obviously contemplates that the giving or the refusal of cautionary instructions in each case will depend upon and reflect the exercise of a sound judicial discretion and *not* an arbitrary, inflexible, unyielding and unreasoning policy of either giving or refusing all such instructions in all cases. However, if we were to rule on its merits the Commission's complaint about the refusal of instruction B, we could not say with confidence or assurance, on the record before us, that such refusal constituted a manifest abuse of sound judicial discretion.

The judgment should be and is affirmed.

RUARK, P. J., and McDOWELL, J., concur.