THE PEARSON ELEVATOR COMPANY v. MISSOURI-KANSAS-TEXAS RAILWAY COMPANY, a Corporation, Appellant.—80 S. W. (2d) 137.

Division Two, March 5, 1935.

584

*Carl S. Hoffman* and *Pendleton & Martin* for appellant.

*Roy D. Williams* for respondent.

COOLEY, C.—This case, which comes to the writer on reassignment, was certified to this court by the Kansas City Court of Appeals. It is an action for damages suffered by plaintiff in the years 1927, 1928 and 1929 because of defendant's failure to construct and maintain

suitable ditches along the sides of its railroad as required by Section 9953, Revised Statutes 1919, now Section 4765, Revised Statutes 1929 (3 Mo. Stat. Ann., p. 2158). There are three counts in plaintiff's petition, one for the damage suffered in each of the three years mentioned. Plaintiff recovered a verdict of $600 on the first count and $1050 on each of the others. The court required it to remit $300 of the verdict on the first count, $450 on the second and $150 on the third, and upon that being done overruled defendant's motion for new trial and entered judgment for the remainder of the sums assessed by the jury. An appeal was granted defendant to the Kansas City Court of Appeals where, by a divided court, the judgment of the circuit court was affirmed. One judge of that court was of the opinion that a constitutional question had been raised by defendant's answer and had been kept alive, thus depriving the Court of Appeals of appellate jurisdiction. He deemed the decision of the majority holding that no constitutional question was involved and that the Court of Appeals had jurisdiction to be in conflict with the decision of this court in State ex rel. Brenner v. Trimble, 326 Mo. 702, 32 S. W. (2d) 760, and requested that the cause be certified to this court, which was accordingly done. While we are of opinion that a constitutional question such as to vest appellate jurisdiction in this court was not raised below and that the Court of Appeals had jurisdiction of the appeal we think that under Section 6 of the Amendment of 1884 to Article VI of the State Constitution the transfer of the cause by the Court of Appeals to this court lodges the case here for disposition of the appeal on the merits. [Child Saving Institute v. Knobel, 327 Mo. 609, 37 S. W. (2d) 920.]

Plaintiff's evidence tended to show the following: About 1921 the plaintiff built a grain elevator on the south side of defendant's right of way at Pearson, a station on defendant's railroad. The railroad had been built many years before. In that vicinity it is in the Missouri River bottom and on an embankment above the general ground level. A small stream called Salt Creek comes out of the hills to the north, and flows eastwardly on the north side of the railroad to a point a considerable distance east of Pearson where it passes through a culvert to the south side of the railroad and eventually discharges into the Missouri River. The ground slopes downward to the northeast from the place where plaintiff's elevator is located, and but for the railroad embankment surface water would drain off in that direction into Salt Creek. There are tiled openings in the embankment several hundred feet west of the elevator through which water passes to the south of the railroad when Salt Creek gets out of its banks. It also frequently happens that overflow water from Salt Creek comes over the railroad embankment. Because of the presence of the railroad embankment and the absence of ditches along the side thereof

such overflow and other surface water, during the years involved herein, could not get back into Salt Creek when the water therein fell so that but for such impediments it could have done so, and it would stand on plaintiff's land and about the elevator, often for a month or so, until it evaporated or was absorbed by the soil. Water thus coming and remaining about the elevator found its way into the lower part of that structure. That condition existed to a considerable extent during 1927, and during 1928 and 1929 was so bad as to practically destroy the usefulness of the elevator.

Plaintiff's evidence further tended to show that ditches along the railroad constructed and maintained as required by the statute would have relieved the situation and prevented the damage complained of; that such ditches could have been constructed and maintained practicably and at reasonable cost; that the elevator was erected on a knoll or ridge higher in elevation than the general level of the land thereabout and that when erected there was no reasonable ground to expect the damage from water that subsequently occurred; that there was then a "kind of a ditch," more of the nature of a borrow pit or ditch than a regularly constructed drainage ditch, which afforded escape for the water coming onto the land in question, but that it had filled up so that by 1927 it had practically ceased to function for drainage purposes; that on one or two occasions prior to 1927 some water had gotten into the basement of the elevator but had been pumped out and had escaped through said borrow ditch or pit and had done no great damage; but that in 1927 and especially in 1928 and 1929 the damage from water could not be prevented by pumping out the water coming into the elevator because of the quantity thereof and the presence of the water about the elevator, since it would come in as fast as it could be pumped out. Plaintiff pleaded and introduced evidence tending to prove the rental value of the elevator for the three years in question. The evidence made a case for the jury on each count of the petition. Its sufficiency was not challenged by demurrer or request for a peremptory instruction. For the disposition of this appeal it is unnecessary further to detail the evidence.

Plaintiff's petition states a cause of action for defendant's failure to cause ditches to be constructed and maintained along the sides of its railroad as required by the statute. Its sufficiency is not challenged. Defendant by its answer admitted its incorporation and that it was at all times mentioned in the petition operating a railroad as therein alleged and denied generally all other allegations of the petition.

Further answering it pleaded certain matters as estoppel, an issue not presented on this appeal and which therefore need not be noticed. It then alleged that the conditions existing at the place where

the elevator was constructed had existed for a long time prior to such construction and that plaintiff built its elevator with knowledge of such conditions, thereby being guilty of contributory negligence and assuming "the risk of any damage that might be done by the failure, if any, of the defendant to dig ditches along its right-of-way, for drainage of the land on which said elevator was constructed." The issue thus presented was submitted to the jury on instructions given at defendant's request and was decided by the jury adversely to defendant. It was a controverted issue on which there was substantial evidence in plaintiff's favor and is concluded by the verdict.

For further defense to the third count of the petition defendant alleged: "Further answering the third count of said petition the defendant states that in the year 1928 a drainage district was incorporated by a decree of the circuit court of Howard County, Missouri, under and pursuant to the provisions of Chapter 28 of Article 1 of the Revised Statutes of 1919 of said state, which drainage district embraced the land of the plaintiff described in its petition and also all of the defendant's right-of-way adjacent to said land and between said land and where Salt Creek crosses its right of way to the east thereof. That prior to the year 1929 the plan of reclamation or drainage for said district was completed and an assessment of $17,500 was made against this defendant for benefit to its said property resulting from said plan of drainage, and that the defendant was thereafter forbidden by the statute Section 4425, Revised Statutes 1919, to construct in said district any ditch or drain which would connect with said plan of drainage, and that the ditch or drain, down its right-of-way to connect with Salt Creek alleged in plaintiff's petition as necessary to drain its said land, and for the failure of the defendant to construct which ditch it seeks to recover against the defendant in this action, would connect with said plan of drainage in said district. And defendant further alleges that to hold the defendant liable to construct the said ditch down its right-of-way after having been assessed the sum of $17,500 for its share of the cost of said plan of drainage in said district would constitute the taking of the defendant's property without due process of law, and would be in violation of Section 30, Article 2 of the Constitution of the State of Missouri, and of Section 1 of Article 14, of the Amendments to the Constitution of the United States."

Plaintiff moved to strike out the above-quoted portion of the answer on the ground that the matter therein pleaded constituted no defense, which motion the court sustained. Complaint is made of that ruling.

In determining this question the Kansas City Court of Appeals said: "We fail to see how the organization of a drainage district in that locality (being after the construction and operation of the

railroad and after the expiration of the time allowed by the statute for the construction of drainage ditches by said railroad) can be allowed to absolve the railroad from the *consequences* of its failure to obey the statute (now Sec. 4765, R. S. 1929), in constructing the ditches required by it. The railroad was built in 1884, years before the time of the damage complained of in the third count. The ground about the elevator was filled up, not because of the failure of the railroad company to build a ditch in 1929, but because it had not built its ditches within the statutory time after the railroad's completion and operation.

"The suit is not to compel the railroad to *now* build a ditch, but to recover *damages* in part payment, at least, of the loss sustained on account of defendant's failure to perform its statutory duty. This being the case, the organization of a drainage district has nothing whatever to do with the case, and hence the court did not err in striking out the above specified portion of defendant's answer."

In addition to the facts pointed out in the foregoing excerpt it should be noted that the section of the drainage district statute relied upon, Section 4425, Revisd Statutes 1919, Section 10795, Revised Statutes 1929 (5 Mo. Stat. Ann., p. 3521), does not forbid unconditionally even the *construction* and connection with the drainage system of the district of a ditch such as that here in question. It provides that ditches or systems of drainage already constructed in the district at the time of the construction of "the plan for reclamation" adopted shall, if necessary to the drainage of any lands in the district, be connected with and made part of "the works and improvements of the plan of drainage of said district;" but that no ditches or systems of drainage *thereafter* constructed shall be so connected without consent of the board of supervisors of the district; and further provides for proceedings in the circuit court having jurisdiction of the district, if the board of supervisors refuse consent, whereby the court may determine whether the connection may be made. If defendant had constructed and maintained ditches along its railroad as required by Section 4765, Revised Statutes 1929, the drainage statute would have required their inclusion in the drainage plan adopted by the district. Nor does the portion of the answer stricken out allege facts showing that defendant could not have constructed such ditch even after the alleged completion of the plan of reclamation in the drainage district. It is not alleged that the board of supervisors did not or would not consent to such construction and the connection of such ditch with the drainage system adopted, nor that it would have been necessary to connect with or to interfere in any way with the "works and improvements" of the district, if in fact they had been completed;—a point regarding which the answer is vague. It is not clear whether the pleader meant to

say that the *construction* of the drainage system had been completed or merely that the plan therefor had been adopted and in that sense completed. In either event the answer in effect alleged that the ditch in question would have connected with Salt Creek, a natural water course, not with any drains or works constructed by the district. Given the construction most favorable to defendant the matter stricken out does not show that defendant was precluded from complying with said Section 4765 by the organization of the drainage district. Neither is it alleged (unless, perhaps, as a mere conclusion) nor can we see how the fact that "an assessment of $17,500 was made against this defendant for benefit to its property resulting from said plan of drainage" can relieve defendant from the consequence of its failure to comply with said Section 4765. Appellant does not attack the constitutionality of either that statute or the drainage district statutes. Its complaint seems to be directed to the construction or the application of the statutes. It does not appear from the facts stated that the organization of the drainage district and the alleged proceedings thereunder constitute a defense to plaintiff's cause of action. In our opinion the circuit court did not err in striking out the portion of the answer in question.

Appellant complains of plaintiff's instructions Nos. 1, 2 and 3, relating respectively to the first, second and third counts of the petition. The complaint is as to the measure of damages defined by the instructions, which is stated to be "the diminution, if any, of the rental value, if any, of the elevator of plaintiff which it was unable to use, if they were unable to use said elevator, by reason of the water remaining on said land and in said elevator, if any, in consequence of the failure of defendant to construct and maintain such ditches and drains." Appellant in its brief, thus states its contention on this point:

It was an abatable nuisance, abatable by the injured party by the simple process of pumping out the water, as was done by respondent in several years prior to 1927. If there is any liability in this action, the measure of respondent's damage is the expense of removing the water and the loss of the use of its elevator until the effect of the water was abated, and not the annual rental value of the elevator."

Plaintiff in each count of its petition pleaded that the elevator had been rendered unfit for use during that year by the accumulation of water due to defendant's failure to construct and maintain ditches as required by statute, alleged its rental value as $3000 and asked damages in that sum. Evidence was introduced without objection tending to prove the rental value, obviously on the theory that such was the proper measure of damages and without suggestion from defendant to the contrary. Defendant asked no instruction on the measure of damages. It asked and was given instructions telling

the jury that the burden was on plaintiff to prove that the damage to the elevator *shown by the evidence* (italics ours) was caused by defendant's failure to construct a ditch along its right-of-way and not to any water which would not have been drained out or kept out by such ditch. The instructions complained of did not authorize recovery of the entire annual rental value but only of the diminution thereof, if any, shown by the evidence to have resulted from defendant's failure to construct and maintain the ditches. There was some evidence that on certain occasions prior to 1927 water had gotten into the elevator and had been pumped out. Plaintiff's evidence tended to show that it could then escape because the borrow ditch above mentioned had not filled up, but that by 1927 that ditch had become filled up and had ceased to function, and that in each of the years 1927, 1928 and 1929 water accumulated and remained about the elevator in such quantities that relief could not have been obtained by pumping out that which got into the structure. Defendant's evidence does not seriously dispute the presence of water in large quantities about the elevator in the three years mentioned. We think the evidence in this case would not justify a finding that the situation could have been relieved by pumping out the water and did not require plaintiff to submit that question. Moreover we think it apparent from the record that defendant tried the case below on the theory that the measure of damages indicated in plaintiff's petition and embodied in its instructions was proper and it must therefore adhere to that theory on appeal. [Ellis v. Metropolitan Street Ry. Co., 234 Mo. 657, 676, 138 S. W. 23; LaCrosse Lumber Co. v. Powell (Mo. App.), 247 S..W. 1022, 1024 (1).] We rule this point against appellant.

Appellant argues that the jury ignored its instruction on contributory negligence. The instruction was too favorable to the defendant. It omitted facts which plaintiff's evidence tended to prove and which would absolve plaintiff from the charge of contributory negligence. But since the jury found for plaintiff on this issue and there is evidence to sustain such finding, defendant is in no position to complain.

The judgment of the circuit court is affirmed. *Westhues, C.,* not sitting; *Fitzsimmons, C.,* concurs.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.