HOWARD DAUGHERTY, Respondent, v. PRESTON MADDOX, Administrator of the Estate of LUTHER S. WINN, Deceased, Appellant, No. 43329—260 S. W. (2d) 732.

Division Two, September 14, 1953.

*Don C. Carter* for appellant.

*Latney A. Barnes, William H. Becker* and *Edwin C. Orr* for respondent.

242

BOHLING, C.—Howard Daugherty instituted this action in the Circuit Court of Boone county against Preston Maddox, Administrator of the Estate of Luther S. Winn, deceased, to recover $28,781, the alleged reasonable value of personal services rendered to Luther S. Winn for approximately 36 years during his lifetime, less admitted credits of $1,572.40, leaving a balance of $27,208.60, and $200 for services rendered to the said administrator. The case was tried in Audrain county upon a change of venue. The jury returned a verdict for plaintiff for $18,000, and defendant has appealed from the judgment entered thereon. Defendant questions rulings on the giving and refusing of instructions, the admission of certain testimony, a demonstration on the part of the audience and the amount of the verdict.

Elsie Mae Daugherty, plaintiff's wife, was the main witness for plaintiff. She testified that Luther S. Winn married her mother, a widow, in 1911. Elsie Mae was then 14 years old. Mr. Winn was a bachelor, strong, hale and hearty, and owned a hundred and sixty acre farm near Hallsville, Missouri. Elsie Mae lived with her mother and stepfather on his farm. She and Howard Daugherty, plaintiff, married on September 11, 1914. Mrs. Winn acquired a farm, we understand of 80 acres, in 1914 or 1915, and later Mr. Winn paid off the mortgage on this farm.

Mrs. Daugherty testified that she and her husband moved into the house on her mother's place; that after they were there several months Mr. Winn asked them to come back to the Winn farm and stated that

if she and her husband would stay with Mr. and Mrs. Winn, he would see that she received everything he had and would pay plaintiff for the work that he did; that Mr. Winn told her husband that he would be paid for the work he did on the farm; that her husband did not want to agree to this, he wanted to work for himself and not work for Mr. Winn all the time, and that they moved to Mr. Winn's in the Spring of 1915 and plaintiff started working on Mr. Winn's farm.

There was evidence that between February, 1915 and January 1, 1951, the date of Mr. Winn's death at the age of about 80 years, plaintiff rendered services in the field of general farm labor, farm supervision and management, the furnishing of transportation, and personal care and assistance in nursing Mr. Winn.

In the Fall of 1919, Mr. and Mrs. Winn separated and Mrs. Winn and Mr. and Mrs. Daugherty moved to Mrs. Winn's place, about two miles from the Winn farm. A reconciliation occurred in about 6 months. Mrs. Winn returned to her husband's home. Mr. and Mrs. Daugherty remained on Mrs. Winn's place, where they continued to live until October 1, 1936.

Mrs. Daugherty testified that plaintiff worked for Mr. Winn a total of 254 months between February 1, 1915 and October, 1936; and that plaintiff's services were worth $80 a month, or $20,320. On direct examination she testified that she and her husband figured out the account. Asked on cross-examination how she arrived at $80 a month, she answered: "Howard [plaintiff] figured it out."

Mr. and Mrs. Daugherty purchased a drug store at Hallsville on October 1, 1936, and operated it until it was sold on October 1, 1939, living or staying upstairs over the store. Mr. Winn loaned plaintiff $500 to purchase the drug store, taking plaintiff's 8% note, dated October 10, 1936, as evidence of the loan. The note was paid when the drug store was sold. Next, the Daughertys lived on Mrs. Winn's place from October 1, 1939, until June 1, 1940. From June 1, 1940, until June, 1942, they operated a filling station. The filling station was sold in June, 1942, and they moved to Columbia, where they lived and plaintiff worked for 3 years, until June, 1945, when they returned to "Mrs. Winn's" place.

Mrs. Winn died April 19, 1941.

Mrs. Daugherty gave testimony to the following effect with respect to the time plaintiff rendered services to Mr. Winn and the value thereof: While they operated the drug store, 8 days a month, at $40 a month, or $1,440. Between October 1, 1939, and June 1, 1940, 10 days a month, 80 days, $400. While they operated the filling station, 8 days a month, $960. June 1, 1942, to June 3, 1944, 23 months, $5 a month, or $115, and plaintiff had charge of the farm for 30 days while Mr. Winn was incapacitated by an injury, $200. June 1, 1944, to January, 1949, 12 days a month for 32 months $6 a day, or $2,304. January 1, 1949, to January 1, 1951, 21 months, $72 a month, or $1,512,

and, further, that plaintiff was asking additional sums for personal services to Mr. Winn while he was sick at the Daugherty home during said period and $380 for transportation; and also $200 for caring for Mr. Winn's property for the administrator for a month.

There was corroborating testimony from other witnesses on the fact that plaintiff performed services for Mr. Winn and that Mr. Winn stated he expected to pay plaintiff for what plaintiff did.

Mrs. Daugherty testified that she knew her husband took the benefit of the bankruptcy law and at that time Mr. Winn owed plaintiff in excess of $8,000. The schedules in the bankruptcy proceedings, filed in 1924, do not list any claim against Mr. Winn. She testified that at the time plaintiff borrowed $500 from Mr. Winn in October, 1936, Mr. Winn owed plaintiff $20,000; that plaintiff wanted to ask Mr. Winn to pay on account but she would not let him; that plaintiff never asked Mr. Winn for a cent or told Mr. Winn he owed him anything, and that Mr. Winn never paid plaintiff.

Defendant-appellant copies his motion for new trial in his brief under the heading "Assignments of Error" and follows it with his "Points and Authorities." The first two, so far as material, read:

"I. The trial court erred in giving Instruction P-1, on the part of plaintiff. Hyde v. Honiter, 175 Mo. App. 583; Shern v. Sims, 258 S. W. 1029; Wood v. Lewis, 183 Mo. App. 553; See cases cited under V. A. M. S., Sec. 464.010, headings 20, and 33 to 39, inclusive.

"II. The trial court erred in refusing Instruction D-1, offered on the part of defendant"; citing two cases.

Our Rule 1.08 (352 Mo. appendix iii) contemplates that the points and authorities in an appellant's brief specify the alleged error and the reason or reasons for holding the action of the court erroneous (a, 3). Assignments of error are no longer required to be stated separately for repetition and development under the "Points and Authorities" in the brief. The points quoted above do not comply with Rule 1.08, and do not preserve anything for review. See among other cases, Meierotto v. Thompson, 356 Mo. 32, 201 S. W. 2d 161, 165[4]; Langston v. Howell County, Mo., 108 S. W. 2d 19, 21[3]; Kleinschmidt v. Globe-Democrat Pub. Co., 350 Mo. 250, 165 S. W. 2d 620, 623[2-4]; State ex rel. v. St. Louis Union Trs. Co., Mo., 248 S. W. 2d 592, 595[2]; Carver v. Missouri-K.-T. R. Co., 362 Mo. 897, 245 S. W. 2d 96, 102[11]; Gurley v. St. Louis Pub. Serv. Co., Mo., 256 S. W. 2d 755, 756[1]. The reference under Point I to the many cases under § 464.010, notes 20, 33-39, is not proper. Block v. Holly, Mo. App., 106 S. W. 2d 963, 965[4].

Defendant's "point" that testimony "that none of deceased's relatives had ever done anything for him or come to see him, and that the deceased did not want any of his relatives to have any of his estate" was prejudicial and erroneously admitted over defendant's

objections was sufficient to raise the issue that the testimony was inadmissible, and especially so if we consider the assignment of errors on the issue, which is in greater detail. Baumhoer v. McLaughlin, Mo. App., 205 S. W. 2d 274, 276[1]; Ford v. Louisville & N. R. Co., Mo., 183 S. W. 2d 137, 138[1, 2]. Defendant's "point" on the verdict being excessive is based in part on the admission of such testimony.

The court stated the questioned testimony showed the reasonableness of the contract in issue, and the testimony was admitted over repeated objections by defendant and with the understanding it was subject to the objections.

Mrs. Daugherty testified that she had seen only two or three of nineteen named relatives of Mr. Winn at his place and had never seen any of them do anything for him, we understand, between 1941 and 1951. She also testified that Mr. Winn was "a very wicked man"; that "he cursed. And he said that he didn't want to see any of his nieces or nephews have a cent of his money and that his brother had plenty to take care of himself"; that "he said if he was sick they wouldn't give him a drink of water if he was dying, or they wouldn't pull him out of a mudhole if they found him in a mudhole in a road."

Other witnesses for plaintiff testified that Mr. Winn "said he would just as soon his estate would go up in smoke as for his relations to get it"; that three or four months before his death, Mr. Winn said his folks "wouldn't feed me if I was hungry"; that Preston Maddox, a nephew, never helped in any way on the Winn farm; that Mr. Winn said "he would see Preston Maddox in hell before he ever got any of his money. I have heard him say that lots of times"; that what Mr. Winn said about his kinfolks would not sound very good in court, and that the substance of what Mr. Winn said was that "they didn't give a damn for him and he didn't for them and he didn't want them to have any of his money."

In Wandling v. Broaddus, Mo., 10 S. W. 2d 651, 655[8] (same case, Mo. App., 265 S. W. 1003), evidence tending to show that the recipient was estranged from her nearest relative, a sister, was held competent as tending to show that the recipient was alone in the world and because of her age and frail physical condition was in need of someone to care for her.

Heathcock v. Wolfe, Mo. App., 136 S. W. 2d 105, 108[1, 2], was a suit on an express contract for personal services performed for one Rader during his lifetime. Rader, at the time of the contract, was past 80 years of age, and it was considered proper to show that he had no relatives in this country and had accumulated an estate of $10,000 to $15,000 as going to establish that a man in his condition would make such a contract.

In Schwartz v. Mercantile Trust Co., Mo. App., 279 S. W. 253, 255[4], both parties treated as material the number of times the daughters visited their mother, the decedent, and defendant's objection to a

portion of such testimony was properly overruled as he was bound by the position taken.

We think the Wandling and Heathcock and other like cases are correctly ruled. The instant situation differs. Each of the two verdict directing paragraphs of plaintiff's main instruction proceeded upon the theory that plaintiff had rendered services to Mr. Winn "between February, 1915, and January 1, 1951, continuously and without substantial interruption." In 1915 when plaintiff began to render the services sued for, Mr. Winn was in the prime of manhood. Plaintiff's wife described him as a man who worked from sunup to sundown, from 5:00 a.m. or earlier to as late as 9 p.m., a very hard-working man who didn't know when he did a day's work. He had been a bachelor, a farmer, and had acquired 160 acres of land. He was not alone in the world, but a married man, and he and his wife lived together until her death, April 19, 1941, approximately 26 years after plaintiff entered upon the services sued for. Other witnesses for plaintiff described him as a "good businessman," and one who paid his debts. The State Bank of Hallsville was organized in 1919 and Mr. Winn was on the Board of Directors of the bank, serving for a time as its President and as a director ▮▮▮▮ until his death. After Mrs. Winn's death, Mr. Winn employed housekeepers, and one of the housekeepers was with him for over eight years from April or June, 1942, until he was taken to plaintiff's home during his last illness in November, 1950.

The testimony that Mr. Winn's relations would not give him a drink of water if he were dying, or would not pull him out of a mudhole, et cetera did not bear on the issues involved in this suit, which were limited to whether an actual contract for the services claimed to have been rendered existed between plaintiff and Mr. Winn, or was to be implied from the circumstances and acts of the parties, and whether plaintiff rendered the services, and the reasonable value of the services rendered. The testimony was not testimony of facts but of hearsay conclusions. It did not establish reasons for entering into a contract of the nature here involved many years prior to the declarations by a good businessman in the very prime of his life. A man of the experience and ability ascribed by plaintiff's witnesses to Mr. Winn knows how to disinherit his collateral heirs. Counsel for plaintiff, over objection, based his argument to the jury in part on this testimony. In a like case the admission of testimony that the decedent had no near relatives to inherit (children, brothers or sisters) was held error in Smith v. Sims, Mo. App., 258 S. W. 1032, 1034[5]. Defendant's objections should have been sustained. It was error to admit the testimony in the circumstances of this case.

It follows that the judgment should be reversed and the cause remanded. It is so ordered. *Westhues* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.