### PALMER

v.

### SECURITY INS. CO. OF NEW HAVEN, CONN.

### No. 21884.

Kansas City Court of Appeals.
Missouri.

Dec. 7, 1953.

Harry H. Kay, Eldon, Donnelly & Donnelly, Lebanon, for appellant.

Fields & Low, Lebanon, Neale, Newman, Bradshaw, Freeman & Neale, Jean Paul Bradshaw, and Donald J. Hoy, Springfield, for respondent.

DREW, Judge.

This action was brought to recover the full amount of an insurance policy for the sinking of a motor boat, and for damages for vexatious refusal to pay, and for attorneys' fees. The plaintiff (respondent)

received a verdict and judgment for $1000, the full amount of the policy, $25 interest to date of trial, $100 damages and $500 attorneys fees, a total of $1625. The defendant has appealed.

Since the sufficiency of the petition is challenged we shall set forth the substance of the allegations thereof pertinent to the points here made. It was alleged that the defendant on June 7, 1951, issued to plaintiff the policy in question, whereby it insured him, among other things, against loss of or damage to the hull or machinery of a certain yacht called "Delores" directly caused by breakage of shafts or any latent defect in the machinery or hull of said yacht, then the property of the plaintiff; that under the terms of the policy defendant also agreed that if the expense of recovering or repairing the yacht by reason of said loss or damage exceeded the agreed valuation of $1000, defendant would pay to plaintiff the sum of $1000 for a constructive total loss under the policy. It was further alleged that on a certain day in July, 1951, while the policy was in effect, and while the yacht was docked on navigable inland waters in the State of Missouri, the yacht sank as a direct result of a latent defect in its machinery; that the cost of recovering and repairing the yacht would far exceed the agreed valuation of $1000, whereby defendant at once became liable to plaintiff for the sum of $1000 under the terms of the policy. It is averred that plaintiff promptly notified defendant of the sinking of the yacht and the loss resulting therefrom, as required by the policy and by law; that plaintiff on a day in July, 1951, demanded payment of defendant of said loss, but defendant refused and still refuses to pay any part of same and has at all times denied liability therefor under its policy. It is alleged that such refusal was vexatious under the statutes because defendant denied liability at all times prior to the trial without giving any reason therefor, never has tendered a return of any part of the unearned premium paid, which paid for such insurance up to June 7, 1952, and that such denial of liability was without reasonable or probable cause or excuse. The prayer was for $1000, with interest thereon at 6 percent per annum from the date of demand, together with $100 damages for vexatious refusal to pay the loss, plus $500 as a reasonable attorneys' fee.

A motion to dismiss the petition was thereafter filed by defendant on the general ground of failure to state facts sufficient to state a cause of action. This motion was overruled. The answer of the defendant admitted the issuance of the policy and denied all of the other allegations of the petition. Further answering, defendant averred that plaintiff, in his written application for the policy, had represented the boat as a Hacker Boat Company yacht, built in 1945, as was described in the policy, whereas the boat was not built in 1945, nor by Hacker Boat Company, but was built prior to 1935, whereby defendant is not liable for a boat not described in the policy; that in such marine policy there is implied a warranty of seaworthiness; that the boat mentioned in the petition was not in a seaworthy condition, but was unseaworthy as to machinery and hull, particularly in that the stuffing box packing nut on the drive shaft was not secured by a lock nut, which permitted the stuffing box packing nut to come off and allow water to enter the hull; that the automatic bilge pump or bailer was so constructed and installed as some times to back-prime, thus causing water to be siphoned into the hull instead of out of it; that the stuffing box packing nut was off when the boat sank, causing water to enter the hull and the boat to sink, thus causing the supposed damage to the boat described in the petition; wherefore, defendant is not liable for such damage or any part thereof; that the provisions for payment under the policy are subject to the proviso therein that "provided such loss or damage has not resulted from want of diligence by the owner of the said yacht, or any of them, or by the manager, or by the assured"; that the conditions causing the boat to sink, as described in the answer, were the result of a want of diligence on the part of the plaintiff, owner and the assured.

At the opening of the trial defendant filed a motion for judgment on the pleadings, no reply having been filed. On request plaintiff was permitted to dictate a reply into the record, denying all the new matter set forth in the answer.

Defendant's first point is that the court erred in refusing to sustain its motion to dismiss plaintiff's petition. It is contended that the petition failed to state a claim upon which relief can be granted, and that it fails to plead compliance with the terms of the policy which are conditions precedent to this action. It is first argued that the petition alleges plaintiff's ownership when the policy was issued, but fails to allege his ownership at the time of the loss. Even if there were otherwise any merit in this contention, suffice it to say that the point was waived in defendant's answer where, in pleading that the loss was due to the plaintiff's want of due diligence, defendant alleged "that the supposed loss or damage mentioned in the petition resulted from want of due diligence on the part of the plaintiff, the *owner of the said yacht and* the insured under said policy of insurance". It is next urged that the allegation in the petition that payment of the loss was duly demanded is a conclusion and does not comply with the provision of the policy that in case of loss it shall be paid in 30 days after proof of loss and proof of interest in the yacht. The petition alleged that the "plaintiff forthwith notified the defendant of the aforesaid sinking of the said yacht and the loss resulting therefrom, as required by the terms of the policy and the laws of this state". Such general allegation of compliance with the contract sued on is authorized by Section 509.170, RS Mo 1949, V.A.M.S.

The second point relied on is that the court erred in refusing to sustain defendant's motions for a directed verdict offered, respectively, at the close of plaintiff's evidence and at the close of all the evidence. As to the former, defendant waived such motion by proceeding to offer evidence in its behalf. Porter v. Equitable

Life Assur. Soc. of United States, Mo. App., 71 S.W.2d 766.

As to the motion for a directed verdict offered at the close of all the evidence it was in writing as follows: "Comes now defendant Security Insurance Company of New Haven, Connecticut, at the close of all the evidence, and moves the court to direct a verdict for defendant for the reason that under the law and the evidence in this case plaintiff is not entitled to recover". Plaintiff strongly asserts that this motion was correctly overruled since it did not state the grounds therefor as required by the code, and for the further reason that it was without merit. The record does not disclose that there was any oral argument on this motion. The motion for new trial presented nothing more specific on this alleged error than was contained in the motion for a directed verdict. There is nothing of record to show that the grounds here relied on to support the motion were brought to the attention of the trial court. Section 512.160, subd. 1 RSMo 1949, V.A. M.S., provides that no allegations of error shall be considered on a civil appeal except such as have been presented to or expressly decided by the trial court. The section excepts questions of jurisdiction over the subject matter and questions as to the sufficiency of the pleadings to state a claim on which relief can be granted or a legal defense to a claim. Section 510.210, RSMo 1949, V.A.M.S., requiring statement of grounds with requests for court action and with objections to actions of the court, with certain exceptions, has been held to require motions for a directed verdict to state the grounds therefor. "Now, since the adoption of the Civil Code of Missouri, we hold a motion for a directed verdict is insufficient save and except the movant 'makes known to the court * * * his grounds therefor' in compliance with Section 122, Civil Code of Missouri, Laws of Missouri 1943, p. 389, Mo.R.S.A. § 847.122 [Section 510.210 RSMo 1949, V.A.M.S.], either in the motion or orally into the record of the trial court." Oganaso v. Mellow, 356 Mo. 228, 201 S.W.2d 365, 366. The exact speci-

fication as stated in the motion herein, to-wit, "under the law and the evidence plaintiff is not entitled to recover", have been held to be insufficient under Section 510.210. Schubert v. St. Louis Public Service Co., Mo.App., 206 S.W.2d 708, 710. In that case the appellate court, nevertheless, considered the point because it appeared from the record therein that the motion was orally argued to the court and the grounds for the motion were presumably then brought to the attention of the trial court. In the Oganaso case, supra, the Supreme Court deemed it proper to consider the motion since it appeared to be a matter of plain error under Supreme Court Rule 3.27, vesting in the appellate court discretion to entertain such points even though not raised or preserved in the trial court, if manifest injustice or miscarriage of justice has resulted therefrom. However, since upon a study of defendant's argument on this point, the contention appears that the theory of plaintiff's petition was not sustained by the evidence nor submitted to the jury, we shall consider the point in respect to the specification argued, to ascertain if any injustice has been done in such aspect of the trial.

The argument of the defendant in its brief is that the court erred in overruling defendant's motion for a directed verdict at the close of all the evidence because the policy insures against loss of or damage to the hull of the boat, subject to average warranty therein, caused by (among other causes set forth) "5. Bursting of boilers, breakage of shafts or any latent defect in the machinery or hull (excluding, however, the cost and expense of replacing or repairing any worn or defective part)"; that the policy further provided that: "No recovery for a constructive total loss shall be had hereunder unless the expense of recovering and repairing the vessel shall exceed the agreed valuation"; that the petition alleged the sinking of the boat as a result of a latent defect in the machinery, and "that the cost of recovering and repairing said yacht by reason of such sinking would far exceed the agreed valuation of $1000, and the defendant, therefore, im-mediately became liable to the plaintiff for the sum of $1000"; that thus the plaintiff framed his petition in such a way that recovery could be had only on the theory of a constructive total loss, whereas, on the trial he sought to recover for "damages" to the boat when there was no evidence whatever to the effect that the cost of re-covering and repairing the boat exceeded the agreed valuation of $1000, or what such cost was. Hence, it is argued, plaintiff failed to make a prima facie case under the policy and cannot now claim under a theory of actual damages sustained to the boat.

The record shows that the plaintiff submitted to the jury the measure of damages to be the difference in the reasonable market value directly caused by the sinking of the boat by reason of a latent defect. This conforms to the usual and correct measure of damage to personal property. Brunk v. Hamilton-Brown Shoe Co., 334 Mo. 517, 66 S.W.2d 903, 910.

Plaintiff contends that his petition alleges both loss of the boat and damage to the boat by reason of a latent defect, and also pleads a right to recover $1000, the agreed valuation, if the cost of recovery and repair exceeds that amount; that the case was not tried on the constructive total loss theory; that the answer of defendant recognized the issue of damage from a latent defect as a cause of the sinking of the boat by specific denial and other allegations tending to deny liability for such defect. Further, that both parties tried the issue of the measure of recovery on the theory that such measure was the difference in the reasonable market value of the boat before and after the sinking, and that defendant cannot change its theory of defense on appeal.

As we construe the plaintiff's petition he seeks, by reason of the sinking of his boat directly caused by latent defect of its machinery and without his fault, to recover under an insurance policy for either the total loss of the hull or machinery of the motor boat insured or for damages thereto, and not to exceed $1000, the full amount of the policy and the agreed valu-

ation of the boat, and since the expense of recovering the vessel or repairing the same by reason of such sinking would exceed such valuation, the full amount of the policy is due plaintiff under the terms as a constructive total loss. The clause of the policy under which the claim is made insures the hull or machinery of the boat and provides: "This insurance also specially to cover, subject to the average warranty herein, loss of or damage to hull or machinery directly caused by * * * any latent defect in the machinery or hull * * *", and further provides: "No recovery for a constructive total loss shall be had hereunder unless the expense of recovering and repairing the vessel shall exceed the agreed valuation". In our opinion this petition authorizes the plaintiff thereunder, as does the policy, to recover any damages to the hull or machinery by reason of the sinking of the boat because of latent defect and without his fault, up to but not to exceed the agreed valuation of $1000, or to recover that amount as for a constructive total loss upon proof that the expense of its recovery and repair exceeded or would exceed $1000.

█ Plaintiff offered no evidence of what the expense was or would be to recover or to repair the boat, or either, but did supply much evidence as to the reasonable market value of the boat immediately before and after the sinking. At the close of the case he submitted his measure of recovery to the jury as "a sum equal to the difference, if any, in the reasonable market value of the said boat resulting directly from the sinking * * *". Defendant offered no instruction on the measure of damages. This measure of damages under the petition and the contract sued upon was proper and authorized on the issue of damage to the boat, to the extent of $1000, which was the amount of the verdict. Weller v. Hayes Truck Lines, 355 Mo. 695, 705, 197 S.W.2d 657, 663.

█ Moreover, plaintiff strongly contends that the case was tried by both parties without objection on the theory of damages to the property insured; that is, the loss of reasonable market value, and without any objection to the submission of such measure of damages. This requires reference to the transcript on that point.

We note from the transcript that the first evidence of value was when plaintiff was asked by his counsel what was the reasonable value of the boat on the day before it sank. Defendant's only objection was that plaintiff had not qualified as an expert. The court said: "The only objection being made at this time is that the witness is not properly qualified?" Mr. Kay: "That's right." The Court: "Overruled". Later plaintiff was asked by his counsel: "Q. Now, Mr. Palmer, what do you say was the reasonable market value of that boat at the time it sank?" No objection was made. "A. I think around $2,000.00". He was later asked by his counsel: "Q. What was the reasonable value of this boat immediately—I mean after they took it out and let it set out there, what is it?" No objection was made. "A. It wasn't worth anything to me, it was just junk is all that was left, the motor was ruined. "Q. That is, if somebody wanted to buy a boat but didn't have to and the other wanted to sell it and didn't have to sell it, what would be the reasonable market value of it? Anything more than just junk? A. No. "Q. And that is the same boat that you say would have had a reasonable market value of around $2,000.00 before? A. That's right". Upon cross-examination plaintiff was asked by defendant's counsel, Mr. Kay, referring to the boat: "Q. 1950. What did you pay for it?" Mr. Bradshaw: I object to that; it would be immaterial to the issue in the case." The Court: "Overruled." Mr. Kay: "What did you pay for it? A. $500.00". Plaintiff was then pressed by defendant's counsel to tell whether or not he paid for it by check or cash, and was asked if there would not be a lot of difference between a 1941 boat and a 1945 boat—"as far as value and being seaworthy".

When Floyd Forsen was put on the stand by plaintiff he testified he sold the boat to plaintiff and plaintiff's counsel inquired, without objection: "Q. What was the

reasonable value of that boat at the time you sold it to him? A. Well, I hardly know how to answer that. At the time we bought it I was in pretty good health and we paid $1800.00 for it expecting to make a nice profit on that, then I got a heart attack or a couple of them—". Objection was made to the answer and it was stricken as not responsive, but defendant's counsel added: "No, I am objecting to what he paid for it. He was asked the question what it was worth when he sold it. The Court: Sustained". "Q. What in your opinion was it worth, then, when you sold the boat to Mr. Palmer? A. Considerably more than what I took. "Q. Well, it has been in evidence that you sold it for $500.00. Let me ask you: Would it have been worth that much or more, considerably more, did you say, than that? A. Yes, sir, it was. "Q. Worth considerably more? A. Yes, sir". After calling the attention of the witness to the fact that plaintiff had made many improvements to the boat, plaintiff's counsel asked him without objection: "Q. What would a boat like that, considering what he was doing to it there and the work that he did on it, what would a boat like that have reasonably been worth in July, 1941? * * *. A: Well, I believe, as a boat dealer, we have certain things to go by, the same as the automobile people, and, as I say, it was around $2,000.00, would be the saleable price". Upon cross-examination, defendant's counsel inquired: "How did he (plaintiff) pay you? A. He gave me a check the first time he was there to bind the deal and he came back when we delivered the boat and paid the balance".

Plaintiff, without objection, inquired of various other witnesses called by him, regarding the reasonable market value of the boat before and after the sinking, and defendant's counsel repeatedly cross-examined them on that subject.

Of particular significance is the defendant's examination of its own main witness, a boat repair man, Jack Rutledge, whom it had engaged to raise the boat, and to transport it to his place of business. On direct examination the following occurred:

Mr. Kay: "Q. Now, Mr. Rutledge, during the 7 years you have been there have you bought and sold a lot of boats? A. Yes.

"Q. And have you seen and known of a lot of boats being bought and sold? A. Yes.

"Q. Are you familiar with the market value of boats of various types? A. Pretty much so.

"Q. And were you familiar with the market value of boats in July, 1951? A. Yes.

"Q. I will ask you to tell us what in your judgment this boat of Mr. Palmer's that has been described here, which you have been describing, was reasonably worth, that is, what the fair market value of it was in July, 1951?" Objection was made by plaintiff's counsel on the ground witness had not seen the boat before it sank.

Mr. Kay: "Q. I will ask you whether or not even after it is raised, two or three days afterwards, can you still give—have a value, that is, an idea as to the reasonable value of the boat?" Objection was again made on the ground that witness had not seen the boat before it sank. Defendant's counsel then asked witness if he, after a boat had been under water two or three days and then raised, could tell what kind of boat it was and its value.

"Q. All right. Now, then, will you tell us what in your opinion was the reasonable value of this Palmer boat in July, 1951?" Objection was again made by plaintiff's counsel on the ground witness had not seen the boat before it sank.

By defendant's counsel:

"Q. Now, *taking into account any damage that may have resulted from being* under the water three days, will you state what in your opinion was the reasonable value of the boat at the time it sank?" (Italics supplied) Same objection.

Mr. Kay: "Q. Will you state what in your opinion the boat was worth before it

was sunk? A. Oh, a couple or three hundred dollars would be my estimation. I wouldn't give that for it". On objection that part of his answer as to what he would give for it was stricken.

Mr. Kay. "Q. What I am wanting to know is what the boat would be sold for between a willing seller and a willing buyer—". Same objection. Objection overruled.

"A. Well, I have sold some boats— * * *. Two or three hundred dollars.

Mr. Kay: "Q. Now then, *after it was raised and in the condition it was in* after it was raised out of the water what do you say its value was? A. Well, I would say that it is worth about as much as it ever was, because the motor is the only item on it that I would place much of a value on, and the motor is still a pretty good old engine". (Italics supplied).

It seems evident from the foregoing excerpts from the record that the defendant recognized the issue of "damages" to the insured property and the measure of recovery therefor to be the difference in its reasonable market value before and after the sinking, and accepted and adopted that theory of defense at the trial. It cannot now be heard to complain that recovery may be had solely on the theory of a constructive total loss. Nor can it now complain that the measure of recovery submitted to the jury was the difference in the reasonable market value. As it was said in Pearson Elevator Co. v. Missouri-Kansas-Texas R. Co., 336 Mo. 583, 591, 80 S.W.2d 137, 140: "Moreover, we think it apparent from the record that defendant tried the case below on the theory that the measure of damages indicated in plaintiff's petition and embodied in its instructions was proper, and it must therefore adhere to that theory on appeal." See, also, La Crosse Lumber Co. v. Powell, Mo.App., 247 S.W. 1022, 1024; Heuer v. John R. Thompson Co., Mo.App., 251 S.W.2d 980, 987; General Motors Acceptance Corp. v. Lyman, 229 Mo.App. 455, 459, 78 S.W.2d 109; 5 C.J.S., Appeal and Error, page 175, § 1503. We find no error in the overruling of defendant's motion for a directed verdict at the close of all the evidence, on the ground assigned.

Defendant's next and remaining two points are stated as follows:

"III. The trial court erred in giving Instruction No. 1 on the part of plaintiff.

"IV. The trial court erred in giving Instruction No. 3 on the part of plaintiff".

Under each of these two points nothing appears except a list of authorities. In such form they present nothing for our review.

Supreme Court Rule 1.08 prescribes that the brief of appellant shall contain, among other things: "The points relied on, *which shall specify the allegations of error*, with citation of authorities thereunder * *." (Italics supplied.) Upon compliance with this rule the reviewing court can, before undertaking to determine a point made, identify it and ascertain if it be one which has been preserved or presented to the trial court, involves a question within the jurisdiction of the appellate court, or is otherwise properly a question for its consideration. The rule "contemplates * * * a particularization in statement of the points relied upon and the citation of authorities to the specific point to which they apply. * *. * The rules involved are not only to aid the court in its work but also to guard against a disturbance of judgments except upon a full and fair presentation of the whole record necessary to a determination of properly presented errors." Wipfler v. Basler, Mo., 250 S.W.2d 982, 985.

The effect of noncompliance with this rule is disposed of in the recent case of Daugherty v. Maddox, Mo., 260 S.W.2d 732, 734. In that case under the heading: "Points and Authorities" in appellant's brief appeared: "I. The trial court erred in giving Instruction P-1, on the part of plaintiff." (Authorities cited.) "II. The trial court erred in refusing Instruction D-1, offered on the part of defendant". (Authorities cited.) The Supreme Court

said, 260 S.W.2d at page 734: "Our Rule 1.08 (352 Mo. appendix iii) contemplates that the points and authorities in an appellant's brief specify the alleged error and the reason or reasons for holding the action of the court erroneous (a)(3). Assignments of error are no longer required to be stated separately for repetition and development under the 'Points and Authorities' in the brief. The points quoted above do not comply with Rule 1.08, and do not preserve anything for review. (Citations.)" See, also, Berghorn v. Reorganized School Dist. No. 8, Mo., 260 S.W.2d 573, 580.

Finding no error materially affecting the merits, the judgment is affirmed.

All concur.