Wanda JONES, an Infant, by and through her Mother and Next Friend, Annie Auberry, Plaintiff-Appellant,

v.

Kathryn ALLEN, Defendant-Respondent.

No. 33957.

St. Louis Court of Appeals, Missouri.

Oct. 6, 1971.

Motion for Rehearing or for Transfer to Supreme Court Denied Nov. 29, 1971.

Application to Transfer Denied Jan. 10, 1972.

James F. Koester, Kenneth M. Weinstock, St. Louis, for plaintiff-appellant.

Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, F. X. Cleary, J. C. Jaeckel, St. Louis, for defendant-respondent.

SMITH, Commissioner.

Plaintiff appeals from the action of the trial court in sustaining defendant's motion for a new trial following a jury verdict and judgment in plaintiff's favor of $8000. The court's award of a new trial was based upon its conclusion that the damage instruction given (M.A.I. 4.01 with the parenthetical option relating to future damages) was unsupported by the evidence as to future damages.

In addition to seeking to uphold the court's ruling on the motion for new trial, defendant also contends that plaintiff failed to make a submissible case under her theory of humanitarian failure to stop and that the verdict is grossly excessive disclosing bias and prejudice on the part of the jury. We deal first with whether plaintiff made a case.

Plaintiff, a fourteen year old girl at the time of the accident, was struck by defendant's car at the intersection of Cole and 12th Streets in the City of St. Louis.

Cole Street runs east and west; 12th Street runs north and south. The intersection is controlled by an electric traffic signal. Twelfth Street is seven lanes wide at the intersection. Plaintiff was crossing 12th Street from east to west in the north crosswalk of the intersection. She remained in the crosswalk at all times. When she left the curb the traffic light was green for traffic on Cole Street. After crossing one lane of traffic the light turned yellow. A truck was stopped, facing south in the third (from the curb) southbound lane of 12th Street. The truck driver signalled plaintiff to cross and she began running. When she reached a point between the second and third southbound lanes the light turned red. She continued running "fast," and looked only straight ahead. There were no vehicles in the second southbound lane. Plaintiff continued running until she was struck by defendant's car in the first southbound lane. Defendant was one car length north of the crosswalk in a stopped position at the time the traffic signal turned green for southbound 12th Street traffic. When the light turned green a car ahead of her moved across the intersection and defendant followed. She was traveling at a speed of no greater than three or four miles per hour upon impact, the highest speed she achieved after starting up. She did not see plaintiff until the impact and stopped her car in less than a car length after the impact. The above recitation of the facts is based upon the evidence taken in the light most favorable to the plaintiff, as it must be where a claim of no submissible case is made.

Defendant seeks to have us view the case upon the basis of the speed of a running child and the distance covered by the plaintiff from the point of immediate danger to the point of impact and to conclude that this distance was covered too quickly for defendant to have stopped. We find that based upon the evidence heretofore set out plaintiff made a submissible case.

At the time plaintiff reached the west edge of southbound lane three she had passed in front of the truck, was running "fast" and was looking straight ahead. With the change of traffic signal after plaintiff had started across the street she was in something of a trap from which she was trying to escape. Plaintiff's testimony was that lane two was clear. We believe this evidence would warrant a jury finding that plaintiff was in a position of immediate danger when she reached the west edge of lane three and that at that point defendant knew or could have known of such danger. At the time plaintiff reached that position, defendant was in a stopped position at least one car length back from the crosswalk. Defendant was traveling three to four miles per hour at the time of impact and did not attempt to stop until that time but was still able to stop her car in less than a car length after impact. We find that a jury could find on this evidence, and the reasonable inferences to be drawn therefrom, that defendant had sufficient distance to stop her vehicle before it entered the crosswalk after plaintiff became visible. Although defendant was actually in a stopped position when the plaintiff became visible, it is not her starting up which caused the accident but her failure to again stop before striking plaintiff.

The cases cited by defendant involve fact situations in which the defendant's position at the time plaintiff reached a position of immediate danger was not shown. Davis v. St. Louis Public Service Co., Mo., 316 S.W.2d 494; Elam v. Allbee, Mo.App., 432 S.W.2d 379; Pankey v. Claywell, Mo.App., 417 S.W.2d 9. The evidence here does not contain this fatal flaw. Both plaintiff's and defendant's positions at the critical time were established by the evidence. Those positions having been established the remaining factual dispute was whether defendant could have stopped her car before entering the crosswalk. Her own testimony established she could have.

As to the lack of evidentiary support for the future damage instruction it may be conceded that no direct evidence was adduced that plaintiff would have disability or pain in the future although defendant's doctor conceded a person could have difficulty for several years. Plaintiff relies upon the recognized rule that "the long continuance of conditions existing at the hearing of the cause is sufficient to warrant the giving of an instruction on future pain and suffering * * * and 'makes a situation where it is for the jury to determine the probable duration of the injury.'" Harrison v. Weller, Mo.App., 423 S.W.2d 226 [6–8]. The evidence of such conditions may come solely from the plaintiff and need not be corroborated by medical evidence, and in fact may be in conflict with medical evidence on the question. Palmer v. Lasswell, Mo.App., 267 S.W.2d 492 [9–11]; Johnston v. Owings, Mo.App., 254 S.W.2d 993 [13]. There must, of course, be a causal connection between the conditions existing at trial and the negligent occurrence, but such causal connection may be established by sudden onset of the conditions at the time of the accident. Harrison v. Weller, *supra*, [9, 10].

The accident occurred in March 1968; the trial was in June 1970. Plaintiff had an immediate onset of pain and received bi-lateral humeral neck fractures of both arms. She testified that she had continued to have pain in the area of injury and was still having pain. At one point in her testimony the following occurred:

"Q Let me ask you this, now, at the present time, Wanda, could you tell us what things, if any, you are unable to do now because of the pain or difficulty you have with the parts of your body you indicated were injured in this accident?

"A Well, like at home I can't do too much work or else they might start hurting; like if I sweep the floor they begin to hurt. I can't pick—you know, like if I pick up a chair they start hurting, feels like something is pulling in my shoulder and it starts hurting.

"Q How about sports activities, are you able to engage in sports activities?

"A No.

"Q Anything else you can think of?

"A I can't fight."

There was additional testimony in the same general vein from plaintiff and from her aunt, with whom she lives.

This testimony was sufficient to bring plaintiff within the rule heretofore set out and to warrant an instruction on future damages.

Both Harrison v. Weller, Mo.App., 423 S.W.2d 226 and Zoeller v. Terminal R. R. Ass'n. of St. Louis, Mo.App., 407 S.W.2d 73, relied on by the trial court and defendant, involved the question of causal relationship between the complaints at trial and the original injury. In each case the continuing problems testified to at trial were different from the original injuries sustained, and no medical evidence was adduced of causal connection. Here the original injury was the two broken arms, and the plaintiff's evidence of continuing difficulty related to pain in the fracture sites and reduced use of the arms. We find that both the fact of continuing pain and suffering and its causal relationship to the accident were sufficiently supported by the evidence to warrant the giving of a future damage instruction. The trial court erred in granting defendant's motion for new trial on this ground.

Defendant contends the verdict of $8000 is excessive. Plaintiff, as previously

indicated sustained two broken arms. These were set in the operating room under anesthesia. Plaintiff was hospitalized for over a month. During the first few days she was in casts on both arms from the shoulders to the wrists. Thereafter for the remainder of her hospitalization her shoulders, back and chest were wrapped and her arms were in slings. She experienced considerable pain. She required medical treatment after release from the hospital. Plaintiff missed a month and a half of school and "had to go to summer school" because she didn't pass. She had made good grades prior to the accident. She was unable to attend gym classes and had had the continuing pain and disabilities heretofore set out.

In Effinger v. Bank of St. Louis, Mo. App., 467 S.W.2d 291 [6] we stated that "Where the verdict has the approval of the trial court, it is conclusive on appeal unless it is so shockingly and grossly excessive or inadequate as to indicate that the amount of the verdict is due to passion and prejudice." The trial court here did not find the verdict excessive although that was a ground alleged in the motion for new trial. In view of the injuries sustained here we cannot say the verdict is shockingly or grossly excessive.

Judgment reversed with directions to reinstate the verdict.

PER CURIAM:

The foregoing opinion by SMITH, C., is adopted as the opinion of this court. Accordingly, judgment is reversed with directions to reinstate the verdict.

BRADY, P. J., and DOWD and WOLFE, JJ., concur.