Elmer GOODMAN and Earlene Goodman,
Plaintiffs-Appellants,

v.

FIRMIN DESLOGE HOSPITAL, a Division of St. Louis University, Inc., et
al., Defendants-Respondents.

No. 35843.

Missouri Court of Appeals,
St. Louis District,
Division Two.

June 8, 1976.

Motion for Rehearing or Transfer
Denied Aug. 18, 1976.

Application to Transfer Denied
Oct. 12, 1976.

908

Hullverson, Hullverson & Frank, James E. Hullverson and E. Lemoine Skinner, III, St. Louis, for plaintiffs-appellants.

Robert E. Keaney, Patrick F. McLaughlin, Moser, Marsalek, Carpenter, Cleary, Jaeckel, Keaney & Brown, H. J. Schmittling, St. Louis, for Firmin Desloge Hospital.

Robert G. Burridge, Stuart M. Haw, Jr., Anderson, Gilbert Wolfort, Allen & Bierman, St. Louis, for Drs. Schweiss and Kaiser.

KELLY, Judge.

Elmer Goodman and Earlene Goodman brought this action against the defendants in the Circuit Court of the City of St. Louis in two counts. In Count I Elmer Goodman sought $600,000 damages for injuries he allegedly sustained by reason of medical malpractice suffered during and after heart surgery performed upon him in the defendant Hospital. In Count II Earlene Goodman, Elmer's wife, sought $250,000.00 for loss of services and consortium. The case was tried to a jury which returned verdicts for all defendants. A timely motion for new trial was filed, heard and overruled, and this appeal followed.

Because of the nature of the points for review presented to this court we provide here a brief statement of the facts of the case and subsequently a more thorough recitation of facts under each point when they have a bearing on the issues presented.

Elmer Goodman, a 47 year old married man, on June 5, 1970, underwent a surgical procedure known in the medical profession as a coronary artery by-pass grafting operation at the Firmin Desloge Hospital—hereinafter "Hospital"—performed by Dr. George C. Kaiser. The anesthetist during this surgery was Dr. John F. Schweiss. Dr. Kaiser is a professor of Surgery at St. Louis University and Director of the Cardiovascular Intensive Care Unit at the Hospital. Dr. Schweiss is Chairman of the Department of Anesthesiology at the St. Louis University and Chief Anesthesiologist at the Hospital and also at the Cardinal Glennon Hospital. St. Louis University operates this Hospital. Plaintiffs' theory of negligence as to Dr. Schweiss was that during the course of preparing Mr. Goodman for the surgical procedure he had negligently struck and injured Mr. Goodman's left median nerve during the insertion of a metal needle into Mr. Goodman's left wrist. The negligence submitted against Dr. Kaiser was that he failed to recommend any tests, or treatment for the damage to Mr. Goodman's wrist except exercise with a rubber ball. Plaintiffs submitted their claim against St. Louis University, of which the Hospital is a division, on the grounds that both doctors were employees of the University, acting in their respective capacities as anesthesiologist and surgeon and within the scope and course of their employment, at the time they were guilty of the negligence of which plaintiffs complained.

■ Appellants' first point is that the trial court erred in not granting them a new trial because one of the trial jurors intentionally failed to disclose on voir dire examination her prior involvement as a defendant in lawsuits for personal injuries. We conclude that the trial court did not abuse its discretion under the facts developed at a post-trial evidentiary hearing and finding that the juror had not intentionally or willfully concealed the fact that she had been a defendant in a lawsuit arising out of an automobile collision occurring in November of 1960.

■ The law is well settled in Missouri on this issue and the constitutional right of every citizen to a trial by a fair and impartial jury, and on the duty of a juror, on voir dire examination, to fully, fairly and truthfully answer all questions directed to said juror testing the juror's qualifications to sit in judgment so that the parties may intelligently exercise those challenges afforded them by law. The cases supporting this thesis are too numerous to cite. This rule applies whether the questions which went unanswered or which were not truthfully answered were directed to the panel generally or to the individual juror. A juror's

intentional concealment of a fact material to her qualifications may require the granting of a new trial. In the final analysis, however, the question of what result should follow the failure of the juror to correctly answer a question touching her qualifications depends upon whether she was guilty of an intentional concealment. "Primarily, the determination of that question must be left to the sound discretion of the trial court." *Beggs v. Universal C.I.T. Corporation*, 387 S.W.2d 499, 503[3, 5, 7] (Mo.banc 1965). The exercise of this discretion by the trial court is nevertheless subject to judicial review and where the appellate court concludes that an abuse of discretion unmistakably appears, it is the duty of the appellate court to reverse the trial court's ruling.

The juror against whom this charge of intentional concealment is levelled is a married woman, 48 years of age at the time she testified at the post-trial hearing, who had a 9th grade education in the school system of the State of Mississippi, and whose employment experience was that of a shirt presser in a laundry which she had left 13 years previously when she became pregnant, and who had also worked for a time in a neighborhood confectionary. She came to St. Louis from Mississippi after her marriage and had lived at the same address for the past 15 years. She testified that she did not recall the lawyers on both sides, while selecting the jury in this case, inquiring if any member of the jury had a lawsuit, or been sued, or gone to court in a lawsuit. She admitted that she had a lawsuit arising out of a collision with a Mr. Tucker on Easton and Goodfellow in 1960, but testified that she had forgotten it until someone called her after the trial of this case and asked if she remembered having this accident. She replied, "Yes!" to this post-trial inquiry. She said she had forgotten about the accident and this telephone call jolted her memory. She did not remember all the details of the two trials, one in the Magistrate Court in May, 1961, and the appeal from the Magistrate Court judgment to the Circuit Court on November 20, 1962, although she did remember appearing in circuit court for a jury trial and that a judgment was entered against her. She also remembered seeing a doctor following the collision but did not remember whether she recovered any money for any injuries arising out of that accident. She was vague about some of the details because her husband took care of those. She denied any intention to conceal from the trial court or the lawyers this experience and that she was aware that this question had been asked during the voir dire examination of the jury.

The attorney who represented this juror in the case arising out of the 1960 collision also was called as a witness at the post-trial hearing and testified from his memory and an office "expenditure card," because the balance of his file had been closed and destroyed. According to his recollection this juror had employed his employer to pursue a personal injury claim against the driver of the other car involved in the automobile collision of November 11, 1960, although his employer did not ordinarily represent insurance companies and defendants in this type of litigation. He had no recollection of trying the case in Magistrate Court but did recall the Circuit Court trial. He could find nothing in his records to indicate that the judgment entered against this juror in the Circuit Court had been satisfied, but his records did show that the juror had settled her claim, without filing a lawsuit, for $450.00, which, after deductions for a doctor bill, attorney fees, and Magistrate Court costs, left a net of $225.00.

The experienced trial judge here was in an excellent position to observe the venireman-juror's attitude and demeanor and to determine whether she had intentionally concealed the facts so vital to the question of the possibility of her prejudice. He most certainly was in a better position to gauge the prejudicial effect of trial events than we are here on the basis of a cold record. We cannot, and do not, find that he abused his discretion in denying appellants' motion for a new trial on these grounds.

During plaintiffs' final argument his counsel, in response to defendants' argu-

ment that had Mr. Goodman's median nerve been hit, at a time when he was on the operating table but not yet under the effect of anesthesia, he would have come up right off the table, argued:

"—how about the other people in the operating room, talking about why didn't Mr. Goodman jump when he got hit in the median nerve. Maybe he did, maybe he did. They only brought two people in out of that operating room. There are nurses in the operating room. And the rest of the hospital record shows there were two to three doctors that were in that hospital room. Maybe Mr. Goodman did jump, maybe he did."

At this point counsel for the Hospital interposed an objection that this was highly prejudicial because "those names that were all known were disclosed." This objection was sustained. Appellants' counsel attempted to pursue this line of argument further but objections were made and sustained. He then attempted to argue that the defendants did not bring in the nurses who wrote the entries in the hospital record and when objections were made by counsel for Drs. Kaiser and Schweiss, they were sustained, the jury was instructed to disregard the argument, and it was ordered stricken.

On appeal, the appellants' first contention is that the trial court abused its discretion in failing to grant a new trial to plaintiffs on the ground that the court had prejudicially erred in refusing to permit the plaintiffs to comment on defendants' failure to produce the other doctors and nurses in the operating room. Appellants' (hereinafter plaintiffs') argument concerning the failure of the *defendants* to offer the testimony of the other people in the operating room is based upon the proposition that a party is entitled to comment on the failure of the opposite party to produce a witness on a material issue who is more available to that opposite party. Respondents argue that there is no material issue on the point because there was no contrary evidence from anyone on the part of the plaintiffs, and therefore the question of availability is never reached. Further, they argue, assuming arguendo that there is such a material issue in the case, even when a witness is not equally available, no inference may be argued from his failure to appear unless it is shown that the absent witness might have testified as to some relevant fact or question in issue.

 It was a very material issue under Mr. Goodman's theory of the case whether the median nerve in his left wrist was struck and injured as he was being prepared for the operation. Dr. Greene, testifying for plaintiffs, opined that the median nerve of Mr. Goodman's left wrist was traumatized by the needle at the time of the radial cannulization and this was the cause of his infirmities. Defendants' evidence, to the contrary, was that there was no traumatizing of the median nerve by the needle, but rather that the scarring was caused by a lack of blood supply to the median nerve caused by spasm, clotting or shock. Dr. Dalton, an expert offered by the defendants, testified that had the needle gone into the median nerve the patient, while still not under anesthesia, would have experienced very severe pain and "I would think he would literally jump off the table." He also gave an opinion that the 5 to 8 cm. defused scarring to Mr. Goodman's median nerve was due to a "state of insufficient defusion to this nerve, the proper flow supply, ischemia" which was due to shock following the operation.

Mr. Goodman's testimony was that after he was laid out on the operating table his left hand was pulled down and then he felt four or five jabs in his left wrist and that was all he could remember until after the operation.

Dr. Schweiss testified that Mr. Goodman had received a pre-operative medication, a standard procedure, at 6:30 a. m. the morning of the operation consisting of a "half dose" of a narcotic because of the discomfort associated with introducing a needle into a nerve as part of a nerve block. Mr. Goodman, he testified, at no time complained of any discomfort associated with the injection he made. He denied that dur-

ing the procedure he stuck the needle into Mr. Goodman's median nerve.

Dr. Kaiser testified that had Dr. Schweiss, before he administered any anesthesia, struck the median nerve of Mr. Goodman with the needle, Mr. Goodman would have complained bitterly and there would be no question in anybody's mind that the nerve had been struck and that there would have been a response from the patient—pain and discomfort—which he would have known about. They, the doctors, would have had a great deal of difficulty. If anything had gone wrong with the radial artery puncture, he testified, he might not have proceeded with the operation or, if they did proceed with the operation, they would have inserted the catheter in the wrist of the other arm. This was not done.

Counsel for the Hospital argues that there was no "matter in issue" created by the evidence lending validity to this line of argument because there was "no direct evidence that anything untoward occurred in the operating room." The basis for this argument is that Mr. Goodman did not testify to feeling any discomfort or pain at the time the catheter was being inserted into his wrist other than that he felt four or five jabs in his left wrist, and there is an absence of any other testimony to the contrary. Any evidence from other members of the operative team would, the Hospital contends, be cumulative only and therefore plaintiff could not have been prejudiced by the trial court's ruling.

Counsel for the defendant doctors argues that the trial court is vested with wide discretion in ruling on the propriety of jury arguments and determining their prejudicial effect, and unless clearly abused, this exercise of the trial court's discretion should not be disturbed on appeal. The doctors' counsel also argues that unless the absent witness, who was not equally available to the other party, might have testified to some relevant fact or question in issue, no argument in this vein is permissible.

■ Missouri cases have established the general rule that the failure of an employer to call as a witness an employee, or explain his absence, when the employee has knowledge of the facts in issue and is apparently qualified to testify in regard to said matters, justifies an inference or presumption adverse to the party-employer and thereby authorizes counsel in a civil case to comment on the failure of the adverse party to produce or examine said employee as a witness in his behalf. *Duboise v. Railway Express Agency, Inc.*, 409 S.W.2d 108, 113[2] (Mo.1966).

The hospital record entries of the Firmin Desloge Hospital recited that Dr. Kaiser was assisted in the operation by Drs. Barnhart and Westerman and that Dr. Schweiss was assisted by Dr. Eachempati, a resident at the Hospital. Appellants' counsel also argues that from the nature of the operation it is clear that there must have been other nurses who assisted in the operation. From this foundation, he contends that his argument was proper and the trial court committed prejudicial error in sustaining defendants' objections.

■ We conclude from the record that the trial court did not err in its ruling because of the shotgun nature of the argument made and the speculative phraseology. Plaintiffs' argument in their brief is directed only at the availability of the witnesses, but availability is not the sole criteria upon which the propriety of argument of this unfavorable inference must be gauged. There must also be some evidence in the record to support a finding that the employee witness had knowledge of the facts and is apparently qualified to testify concerning the facts in issue. From a reading of the record we are unable to deduce what each of these witnesses who were not produced by the defendants were doing at the time of the injection of the catheter into Mr. Goodman's wrist. While the record is clear that Drs. Schweiss and Kaiser were present at the operating table when this procedure was performed, the trial court would have had to speculate whether the other doctors and nurses were in a position to observe the procedure. We believe that before the trial judge can be found to have erred in the

914

respect charged here he must have been presented with a better record to demonstrate that these doctors and nurses were in a position to observe.

Nor does the fact that defendants' medical witnesses testified that had Mr. Goodman's median nerve been struck he would "literally jump off the table" change our viewpoint. There was no testimony by plaintiff that he did jump off the table. All of the evidence in the case was that despite the fact he was somewhat under the influence of a narcotic at the time the procedure was performed, he was still not under the influence of the anesthesia.

Counsel's argument by its very phraseology shows its speculative nature and exceeds the proper scope of argument even if it were authorized. At best, he could only have argued that by the failure of the defendants' to call these witnesses the jury could infer that their testimony would have been unfavorable and damaging to them; not what he would expect the witnesses testimony would be.

 Plaintiffs also contend that the trial court abused its discretion in failing to grant plaintiffs a new trial on the ground that the court had prejudicially erred in refusing to permit the plaintiffs to comment on defendants' failure to produce the nurses who made entries of Elmer Goodman's complaints of pain in the Hospital record.

In his argument plaintiff's counsel argued:

"Did *they* bring in one nurse? No. The one who wrote the entries in the hospital record? And there are two other ones who wrote in, did *they* bring them in? *They* didn't bring in the one who wrote the explanations . . . ."

At this point in the argument counsel for the doctors interposed an objection to this line of argument which was sustained.

Plaintiffs argue that this was proper argument because their expert witness based his conclusions as to the cause of Mr. Goodman's condition and as to the inadequacy of Dr. Kaiser's post-operative care and treatment, in part, on Mr. Goodman's complaints of pain and numbness in the left hand and wrist following the operation. They argue that these complaints were testified to by Mr. Goodman, and that Mrs. Goodman testified that the attending nurses were aware of this. One entry in the hospital record made by nurse Linda Stevens under date of *June 7, 1970* was: 'Fingernails pink and warm. Complaints of some numbness." Dr. Kaiser's testimony was that he was unaware that Mr. Goodman had complaints of pain in his left hand and wrist at the time of his discharge from the hospital on June 19, 1970, and the first time he became aware of these complaints was on July 21, 1970, and that it was only then that he had a basis for diagnosing causalgia. Loretta Sheehan, who at the time Mr. Goodman was in the hospital for the surgery was the nurse in charge of the Cardiovascular Intensive Care Unit of the hospital and supervisor of the other nurses in that Unit, was produced as a witness by counsel for the Hospital. She testified that the nurses were instructed to note in the record every complaint of pain and its location. She was asked to read from the nurses' notes entries made by nurses Sandra Hill and Linda Stevens, and except in two instances, the entries reflecting complaints of pain by Mr. Goodman did not specify the locale. Counsel for the Hospital sought to have this witness interpret the entry of *June 7, 1970* by nurse Stevens but plaintiffs' objection to such interpretation was sustained. It is the failure of. the defendants to produce the two nurses who made the record entries that plaintiffs sought to comment on because they were not equally available to plaintiffs.

We are here confronted with the question whether these nurses were employees of all the defendants, or were in a relationship to all of the defendants so as to authorize a comment by plaintiffs' counsel that all defendants were under an obligation to produce these nurses lest an unfavorable inference might flow therefrom that their testimony would be unfavorable to *all defendants* in this respect. We think not. Here again plaintiffs' counsel sought to paint all

defendants with the same brush when we daresay there is no evidence in this record that, at least as to Dr. Schweiss, these nurses were more "available" to him than they were to plaintiffs. Dr. Schweiss is an anesthetist. These nurses performed their duties in the hospital under Dr. Kaiser's supervision, not Dr. Schweiss', so even if proper argument with respect to the Hospital and Dr. Kaiser, said argument would not be proper as against Dr. Schweiss.

Plaintiffs introduced this hospital record into evidence without any reservations and read into evidence these same nurses' notes in their case in chief and used these same notes in their hypothetical question directed to their medical expert as a foundation for his opinion that Mr. Goodman's median nerve had been stuck with the needle by Dr. Schweiss and should have put Dr. Kaiser on notice as to the onset of causalgia and thereby dictated the initiation of a course of treatment. Counsel for the Hospital was foreclosed when he sought an interpretation of these same record entries by the supervisor of the nurses who made the notes by reason of an objection interposed by plaintiffs' counsel. Despite the fact plaintiffs' own medical expert testified on cross-examination that this particular nurse's notes of June 7, 1970, did not indicate to him causalgia, the plaintiffs had the benefit of his interpretation of these nurses' notes in a light most favorable to their theory of the case and there is no issue whether Mr. Goodman experienced pain and numbness after the operation; all parties agree to that. Where they differ is what caused the pain and numbness and it was the plaintiffs' burden to prove that cause.

Under these circumstances we conclude that the trial court did not abuse its discretion in failing to grant plaintiffs a new trial on the ground that the trial court prejudicially erred in sustaining the objection of Dr. Schweiss' counsel to this line of argument.

Plaintiffs' next contention is that the trial court erred in failing to grant them a new trial on the ground of prejudicial error in refusing to allow them to introduce in rebuttal an alleged admission by counsel for St. Louis University made in a prior opening statement before an earlier jury panel that the doctors did not know what happened to cause the damage to Mr. Goodman's median nerve.

■ While a clear and unequivocal statement by counsel for a party in an opening statement may constitute an admission of fact and may be admitted against said party as an exception to the hearsay rule so as to constitute a judicial admission, *DeArmon v. City of St. Louis*, 525 S.W.2d 795, 799[1–3] (Mo.App.1975), the point presented here is limited to whether the trial court erred in refusing to permit it to be introduced into evidence in rebuttal.

In an earlier trial which was aborted and a mistrial declared because of the illness of a juror, counsel for the Hospital during his opening statement had said, while describing the operative procedure, that there would be no shred of evidence in the case that any doctor ever put a needle or injected anything into the median nerve. He admitted that something did happen and that "We" don't know what plaintiffs' medical expert from New York was going to say, "but the doctors who were there do not know what caused this, because they never, never had anything to do with a median nerve." The offer of this portion of the opening statement was limited as an admission of fact against the Hospital by plaintiffs' counsel.

■ "Rebuttal evidence" is evidence tending to disprove new points first opened up by the opposite party. *Peters v. Dodd*, 328 S.W.2d 603, 610[8] (Mo.1959), *State ex rel. State Highway Com'n v. Schwartz*, 526 S.W.2d 952, 957 (Mo.App.1975). If, as plaintiffs contend this statement by counsel constituted "an admission of fact" this evidence would have been admissible in plaintiffs' case in chief. *Gibson v. Metropolitan Life Ins. Co.*, 147 S.W.2d 193, 196[2] (Mo. App.1941). A trial court has discretion to exclude testimony or evidence in rebuttal not only where it would have been repetitive, but also where it could have been offered in the presentation of the offering

party's case in chief. *Bean v. Riddle*, 423 S.W.2d 709, 719[7] (Mo.1968); *State ex rel. Highway Com'n v. Schwartz*, supra, l. c. 957[8].

Plaintiffs' argument in support of this point is that prior to trial they had been led to believe that the doctors had no knowledge relative to the causation of the damage to Mr. Goodman's median nerve and this was confirmed by the portion of counsel's opening statement made on behalf of the Hospital. They contend that by the time of trial, however, the Hospital maintained that the doctors were positively of the opinion that what had caused the scarring of the median nerve was an insufficient blood supply to the nerve due to shock following the surgery.

We conclude that the transcript demonstrates that neither Dr. Schweiss nor Dr. Kaiser had a medical opinion of the causation of Mr. Goodman's causalgia in its early stages. Both denied however that it could have been caused by hitting Mr. Goodman's median nerve with a needle. It was not until Dr. Dalton, an expert cardiac anesthesiologist, was consulted and formed an opinion that the cause was due to a lack of blood supply incidental to the risk of radial cannulization and not the result of negligence, that Dr. Kaiser admittedly formed an opinion on the cause of Mr. Goodman's infirmities. This fact was brought out to the jury by the Hospital's counsel and during cross-examination of Dr. Kaiser by plaintiffs' counsel who made a point that Dr. Kaiser had gone for a period of three years and three months before he formed the opinion he expressed at trial as to the cause of Mr. Goodman's condition. We conclude that the trial court did not err and rule this point against plaintiffs.

■ Plaintiffs contend that the trial court abused its discretion in failing to grant plaintiffs a new trial on the ground of prejudicial error in refusing to allow plaintiffs to show in rebuttal the anesthesia chart for the operation of 5 June, 1970. We have not been favored with having the anesthesia chart referred to in this point filed with this court nor incorporated in the tran-

script. Rule 81.15. However, from a reading of the record we glean that plaintiffs' counsel proposed to read from the anesthesia chart in the Hospital record that "morphine is indicated, written between 7:30 and 8:00 a. m." after defendants had concluded their evidence. Counsel for the Doctors objected on the ground that it was not proper rebuttal and was repetitious. Plaintiffs' counsel denied that the evidence was repetitious and stated that "I want to show the jury there is an 'X', two 'X's' ". He admitted that "its" already in evidence, but stated that he wanted to read it and show the jury the manner in which it's written at the bottom, between two "X's" written at the time this Medicut was introduced into the man's wrist. He wanted the jury to draw their own conclusions from the hospital record. The court remarked that he didn't see how counsel for the plaintiffs could interpret the Chart. "There is some kind of a medical chart, this is, and this is an anesthesia record" the court said. Counsel agreed and inquired: ". . .; but how can I show? All I can do is put the record in evidence and this is what I want to do, is put it in and then I'll argue . ." The court wanted to know how counsel was going to get the Chart in evidence and said that he didn't see what counsel could read "because they're just check marks and it's a chart, . . ." After some further argument, the objection was sustained.

■ Plaintiffs first introduced the hospital record into evidence in their case in chief as stated hereinabove, and read certain portions of the record into evidence. We deduce from colloquy between counsel and the court that this portion of the hospital record plaintiffs did not read into the record prior to their request to read it on rebuttal. We also glean from these same sources that the record sought to be read consisted of a chart with some checks and "X's" on it, which, without proper interpretation by one qualified to read and interpret same would be meaningless. Under these circumstances we hold that the trial court, in the exercise of its discretion, did not err in refusing to grant plaintiffs a new

trial for its refusal to permit plaintiffs to introduce the anesthesia chart into evidence in rebuttal. *Bean v. Riddle*, supra; *State ex rel. Highway Com'n v. Schwartz,* supra.

■ Plaintiffs' next contention is that the trial court abused its discretion in failing to grant plaintiffs a new trial on the ground that the Hospital, in its opening statement, evidence and argument, improperly played upon the jury's sympathy for the doctor defendants. Plaintiffs argue that by permitting counsel for the Hospital to develop in detail the mechanics of the heart surgery performed upon Mr. Goodman by Dr. Kaiser in his opening statement and in his examination of Dr. Kaiser, over their objection that the details of the heart operation were not material and were calculated to evoke sympathy for the doctors and make them "folk heroes" the trial court erred. Plaintiff candidly admits that its only objection to this was lodged during the opening statement by the Hospital's counsel. They would excuse their failure to object during the examination of Dr. Kaiser and closing argument on the grounds that to continue to object would have been futile in view of the trial court's earlier ruling. They further contend that the final argument in this vein constituted plain error. Rule 79.04.

We conclude that there is no prejudicial error here and that there is no merit to this contention.

■ Plaintiffs' counsel's lone objection occurred during the opening statement when counsel for the Hospital was explaining what the defendants' evidence would be with respect to the operation performed on Mr. Goodman, and in particular the manner in which Dr. Kaiser commenced the surgical procedure. The objection was: "If the Court please, the details of the heart as such are not material to this lawsuit." This objection is insufficient unless it is apparent that the matter objected to is immaterial. *Long v. F. W. Woolworth Co.*, 232 Mo.App. 417, 109 S.W.2d 85, 91[11] (1937), *Carroll v. Missouri Power and Light Co.*, 231 Mo.App. 265, 96 S.W.2d 1074, 1080[15] (1936). We cannot say that it is apparent that this

statement by counsel relative to what he expected the evidence to be was improper or incompetent and that the trial court erred in overruling an objection in this form. Nor do we conclude that the failure of plaintiffs' counsel to renew his objection to this line of evidence when it came in during the course of trial can be ameliorated by their contention that the trial court had indicated by his ruling on this objection that a properly phrased objection at later stages of the trial would be futile. The trial court merely stated: "The objection will be overruled." He did not indicate that under no circumstances would he refuse to entertain a valid objection should the occasion arise.

■ Nor do we find any basis for invoking the plain error Rule in this case. The Rule may not be invoked to excuse mere failure to timely and properly object. *Brown v. Boyd*, 422 S.W.2d 639, 643[5] (Mo. 1968). The general rule is that where a party does not object to argument he deems improper he may not thereafter object on appeal; and the plain error Rule may be resorted to only in those exceptional circumstances when the reviewing court deems that manifest injustice or miscarriage of justice has occurred. *Birmingham v. Coen*, 320 S.W.2d 509, 510[2] (Mo.1959). We rule this point against plaintiffs.

■ Plaintiffs' final point is that the trial court abused its discretion in failing to grant them a new trial on the ground that the combined effect of the errors alleged in the prior points substantially prejudiced them. Having found no prejudicial error in each of the prior points espoused by plaintiffs in those points, we rule this point against plaintiffs also.

Affirmed.

CLEMENS, P. J. and STEWART, J., concur.