**Iris McPHERSON, Plaintiff-Respondent,**

v.

**BI–STATE DEVELOPMENT AGENCY, Defendant-Appellant.**

No. 49148.

Missouri Court of Appeals,
Eastern District,
Division Four.

Dec. 17, 1985.

Harold L. Whitfield and Alif A. Williams, St. Louis, for defendant-appellant.

Sam Goldblatt, St. Louis, for plaintiff-respondent.

PUDLOWSKI, Judge.

Appellant Bi-State Development Agency appeals from a $25,000.00 judgment entered in favor of respondent Iris McPherson. Respondent brought this action under the doctrine of res ipsa loquitur for damages she sustained in a fall while a passenger on appellant's bus. We affirm.

On the morning of September 30, 1980, respondent boarded appellant's Kingshighway bus on her way to work at Belle and Beau Tailoring where she was employed as a seamstress. As she walked to the rear, the bus jerked and respondent was thrown to her knees. She remained on the floor for a few minutes. She then rose and remained seated until she reached her destination. Once at work, respondent stayed only a couple of hours because she experienced pain in her right thigh and knee.

Respondent returned home on the same bus which she rode earlier. She testified that she reported her fall to the bus driver and that he laughed and failed to make an accident report.

When she reached home, respondent informed appellant's office of the incident and then sought treatment at the Jewish Hospital emergency room for injuries to her back, right thigh, and knees. Her physician, Dr. Alphonso Hilliard, who treated her approximately ten times for injuries related to the fall, recorded that she suffered from contusions to her right thigh and knee as well as lumbo-sacral muscle strain. Following the incident, respondent was unable to work for about two months. She left her job at Belle and Beau because she knew her employer would be unable to hold her job open while she recovered.

In October or November, 1980, she regained full-time employment as a seamstress at Goldie's Department Store. During the thirteen to fourteen months she worked at Goldie's, respondent endured continuous pain. She later left this position to move to Virginia. Since her move, respondent has been unable to return to work as a seamstress because of pain and swelling in her legs. She was still suffering from these ailments at the time of trial.

Before trial, respondent was examined by Dr. Louis Reuter at appellant's request. Dr. Reuter's deposed testimony concluded that respondent's injuries had entirely cleared up. At trial, however, neither appellant nor respondent chose to call Dr. Reuter to testify. Nor did appellant choose to read his deposition into evidence. In respondent's presentation of rebuttal evidence, the trial court permitted respondent's counsel to read to the jury appellant's interrogatory answer which identified Dr. Reuter as its expert witness. During closing argument, respondent's counsel argued the negative inference raised by appellant's failure to call Dr. Reuter to testify.

On appeal, appellant raises five issues. First, appellant contends the trial court erred in permitting respondent's counsel to read appellant's interrogatory answer concerning Dr. Reuter and to argue the negative inference because Dr. Reuter was equally available to both parties. Second, appellant argues the trial court erred in instructing the jury on future damages because there was insufficient evidence to support an award of future damages. Third, appellant alleges the trial court erred in instructing the jury on lost wages since respondent testified that she voluntarily left her job. Fourth, appellant posits the trial court erred in failing to give MAI3d 18.01 [1965 New] because the ques-

tion of agency remained in issue. Last, appellant contends respondent's verdict was not supported by substantial evidence and was excessive and inconsistent with judgments awarded to similarly situated plaintiffs.

■ In its first point, appellant challenges the trial court's decision to permit respondent's counsel to read to the jury appellant's response to an interrogatory. The response in question identified Dr. Louis Reuter as appellant's expert witness. On appeal, appellant argues the trial court erred in permitting respondent's counsel to read appellant's response and later to comment during argument on appellant's failure to call Dr. Reuter because the deposition of Dr. Reuter made him equally available to both parties.

Our review of the record establishes that appellant failed to properly preserve this point for purposes of appeal. Objections to the reading of interrogatory answers must be made at the time the answers were read into the record and may not be first raised on appeal. *O'Donnell v. General Motors Corporation*, 534 S.W.2d 271, 273 (Mo. App.1976).

In the present case, the question of reading the now contested interrogatory response first arose at the close of respondent's evidence. At the bench, counsel for respondent informed the trial court that he intended to read appellant's answer which identified Dr. Reuter as appellant's expert. Appellant's counsel made no objection but stated that he had yet to put on his evidence. The trial court agreed and told respondent's counsel he could read the response during rebuttal.

At the close of appellant's case, respondent's counsel again informed the court of his intent to read the interrogatory. The trial court questioned respondent's counsel whether he wanted to read it for the purpose of commenting on appellant's failure to call Dr. Reuter to testify. Before counsel for respondent could answer, appellant's counsel stated, "[Respondent's counsel] can make the comment in his closing argument." Thereafter, without any objec-

tion ever raised, appellant's interrogatory response was read into evidence. The matter was not preserved for review.

■ Appellant also complains that the trial court erred in permitting respondent's counsel to comment during argument on appellant's failure to call Dr. Reuter. Appellant's counsel never objected to respondent's counsel's remarks at the time the comments were made and thus the matter was not preserved for appeal. *Ricketts v. Kansas City Stock Yards of Maine*, 537 S.W.2d 613, 616 (Mo.App.1976). Nor need we consider the reading of the interrogatory response and respondent's counsel's comments during argument under plain error. Rule 84.13(c). Plain error may not be invoked to excuse the mere failure to timely and properly object. *Goodman v. Firmin Desloge Hospital*, 540 S.W.2d 907, 917 (Mo.App.1976). The general rule is that where a party does not object to argument he finds improper, he may not object on appeal. *Id.* Plain error may be used only in those exceptional circumstances where the reviewing court determines that manifest injustice or miscarriage of justice has occurred. *Id.*

■ We next address appellant's second and third points together. Both points arise from the trial court's submission of instruction eight and its order denying appellant's motions in limine with regard to future damages and lost wages. Appellant contends there was insufficient evidence (1) to support an award for future damages and (2) to permit the issue of lost wages to go to the jury. We disagree.

In determining whether there was substantial evidence to support the giving of an instruction on future damages, we view the evidence in the light most favorable to the party tendering the instruction. *Milam v. Vestal*, 671 S.W.2d 448, 450 (Mo. App.1984). "Future damages" is a term which includes future pain and suffering and the intermittent loss of the ability to work and earn. It need not include evidence of a permanent injury. *Id.* at 451. Further, the long continuance of conditions

existing at trial is sufficient to authorize an instruction on future pain and suffering. *Jones v. Allen*, 473 S.W.2d 763, 766 (Mo. App.1971). Evidence of such conditions may come solely from the plaintiff and need not be corroborated by medical evidence and, in fact, may be in conflict with medical evidence on the question. *Id.* There must, however, be a causal connection between the conditions existing at trial and the negligent occurrence, but the necessary causal connection may be established by the sudden onset of the conditions at the time of the accident. *Id.*

Viewing the evidence in the light most favorable to respondent, we find respondent's evidence supported an award for future damages. The accident occurred on September 30, 1980. Shortly after her fall, respondent suffered from pain in her back, knees, and thighs. Her physician, Dr. Hilliard, recorded that she suffered from contusions to her right thigh and knee plus lumbo-sacral muscle strain. Respondent testified that prior to her fall, she never suffered from any of these ailments.

The trial was in May, 1984, almost three and one-half years later. Respondent testified that she continued to have pain in her injured areas and was still having pain at the time of trial. She said she could hardly walk a block without excruciating pain in her back. She also experienced trouble walking up stairs. When questioned whether she had gotten better since her fall, respondent testified, "Not really." She also testified that she frequently suffers from swelling in her legs. In addition, respondent stated that she now suffers from arthritis which developed soon after the accident. Prior to her fall, she explained that she never had arthritis and pain in her legs.

There also was sufficient evidence to permit the issue of lost wages to go to the jury. Before her fall, respondent had been employed as a seamstress by Belle and Beau for about a month. She worked seven and one-half hours a day five days a week for $4.00 an hour. Following the incident, respondent was unable to work for two months. She did not return to Belle and Beau because she knew her employer would not be able to hold her position open.

In October or November, 1980, respondent found employment as a seamstress with Goldie's Department Store. She worked there for thirteen to fourteen months until she moved to Virginia. While at Goldie's, respondent experienced constant pain. In Virginia, she tried to pursue employment as a seamstress but found that the pain in her knees prevented her from following her profession. At trial, she explained that tailoring requires her to get down on her knees and that because of her pain she is no longer able to do so.

We next consider appellant's fourth point. Appellant contends the trial court erred in failing to submit to the jury MAI3d 18.01 [New 1965] on agency because the question of agency remained a disputed issue at trial. We disagree.

Where a fact material to a party's case is conceded or undisputed, its inclusion under a MAI is not mandatory. *Young v. Frozen Foods Express, Inc.*, 444 S.W.2d 35, 40 (Mo.App.1969). In this case, the issue of agency went uncontested at trial. Although agency ostensibly remained a disputed fact under appellant's pleadings, appellant never produced any evidence to controvert it. Appellant failed to raise the issue during its case in chief or its closing argument. Indeed, there was never any doubt that the bus on which respondent's fall occurred was owned by appellant and operated by one of its drivers.

In its last point on appeal, appellant argues respondent's verdict was not supported by substantial evidence and was excessive and inconsistent with judgments awarded to similarly situated plaintiffs. We disagree.

In determining whether a verdict was excessive, we view the evidence in the light most favorable to the verdict disregarding evidence to the contrary. *Eichelberger v. Barnes Hospital*, 655 S.W.2d 699, 708 (Mo.App.1983). We are mindful in

our review that the assessment of damages is primarily the function of the jury whose duty it is to award an amount necessary to compensate for the injuries sustained. *Id.* We also note that appellate courts no longer engage in close scrutiny of the amounts awarded by juries for personal injuries. *Fowler v. Park Corporation,* 673 S.W.2d 749, 758 (Mo. banc 1984). Each verdict must stand or fall on its own facts. *Bender v. Burlington Northern Railroad Company,* 654 S.W.2d 194, 202 (Mo.App.1983). Indeed, the "rule of uniformity" is no longer the sole factor considered in reviewing the excessiveness of damage awards. *Fowler,* 673 S.W.2d at 758 n. 15. Reviewing courts give consideration to the following factors: (1) plaintiff's loss of income and reasonably anticipated future loss of income; (2) medical expenses; (3) plaintiff's age; (4) nature and extent of plaintiff's injuries; (5) due regard for economic factors, such as inflation; and (6) an appreciation of the fact that the jury and the trial court had a superior opportunity to appraise plaintiff's injuries and other damages. *Bender,* 654 S.W.2d at 202. We also note that the doctrine of remittitur was abolished in Missouri. *Firestone v. Crown Center Redevelopment Corporation,* 693 S.W.2d 99, 110 (Mo. banc 1985).

■ Guided by these precepts and viewing the evidence in the light most favorable to the verdict, we conclude the $25,000.00 verdict awarded by the jury was not excessive nor unsupported by the evidence. The instant case was fresh before the jury when they deliberated on the case and returned their verdict. It was also fresh before the trial court when it affirmed the award by denying appellant's motion for a judgment notwithstanding the verdict and its alternative request for remittitur. The evidence clearly showed that respondent, a fifty-two year old woman, suffered injuries to her back, knees, and thigh. These injuries included lumbo-sacral strain and contusions to her right knee and thigh. Following her fall, she visited Dr. Hilliard ten times for treatment. Three and one-half years later, she continued to have pain and swelling in the injured areas. Her pains

eventually precluded her from resuming work as a seamstress because she can no longer perform the kneeling and bending required in that profession. For these reasons, we see no justification to interfere with the amount of the verdict or the discretion of the jury and the trial court.

Judgment affirmed.

CRANDALL, P.J., and KELLY, J., concur.